Commonwealth *v.* Butler, Appellant.

Argued January 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Thomas E. Waters, Jr.* and *Horace A. Davenport,* with them *Waters, Fleer, Cooper & Gallager,* and *Gerber, Davenport & Wilenzik,* for appellant.

*William T. Nicholas,* First Assistant District Attorney, with him *Stewart J. Greenleaf,* Assistant District Attorney, and *Milton O. Moss,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 25, 1972:

On March 11, 1968, seventy-two year old Concezio Cane was attacked while he was walking on DeKalb Street in the Borough of Norristown. A person on the

opposite side of the street heard Cane's screams and saw four Negro figures bending over Cane's body. The headlights of a passing automobile illuminated the scene, permitting the witness to see the incident clearly.

The police were called, and Mr. Cane was rushed to the hospital, but it was too late. He died on the operating table as a result of the stab wounds and lacerations he suffered in the attack and a severe loss of blood.

The police questioned James Denby, who was identified as one of the four men present at the attack. He identified Willie Stafford, Isaac Thomas, and Freddy Butler, appellant, as the other three men, and stated that Stafford and Butler were the men responsible for the attack. By the nature of the attack on Cane and Cane's wounds, the police suspected that the clothing which Butler had worn during the stabbing would have to be bloodstained if he were, in fact, the man who stabbed Cane. A search warrant was obtained on the basis of Denby's statement, and bloodstained clothing was discovered in Butler's residence. The bloodstains were of the same type as the blood of the victim.

Butler was tried and convicted by a jury of first-degree murder and was sentenced to life imprisonment. After denial of his post-trial motions and entry of the judgment of sentence, Butler brings this appeal.

On appeal, Butler contends that the search warrant authorizing a search of his room for various unspecified items of clothing was issued without probable cause. In raising this contention, Butler emphasizes that Denby admitted at Butler's trial that Denby did not remember how Butler was dressed. From this, Butler concludes that the police were on a fishing expedition. However, the circumstances of the attack, including the nature of the victim's wounds and the large amount of blood lost, gave the authorities probable

cause to suspect that the clothing worn by Butler during the attack would be covered with blood and would thus be evidence of his participation in the attack. There is thus the nexus between the items to be seized and the suspected crime committed which is necessary for the search and seizure of purely evidentiary items. *Warden v. Hayden*, 387 U.S. 294 (1967). As the United States Supreme Court explained in *Warden*, ". . . in the case of 'mere evidence,' probable cause must be examined in terms of cause to believe that the evidence sought will aid in a particular apprehension or conviction." (At page 307.)

Appellant also contends that the testimony of Denby and Thomas, both of whom testified at Butler's trial that they saw Butler thrusting something which looked like a knife into the victim, should have been suppressed because the Fifth Amendment rights of Denby and Thomas had been violated. However, it is settled law that appellant lacks standing to assert the alleged deprivation of another's constitutional rights. *Alderman v. United States*, 394 U.S. 165 (1967). While *Alderman* deals with Fourth Amendment rights, its rationale is equally applicable to Fifth Amendment rights. *United States v. Bruton*, 416 F. 2d 310 (8th Cir. 1969), cert. denied, 397 U.S. 1014 (1970).

Appellant's contention that the procedures by which the grand jury which indicted him and the petit jury which tried him were selected were unconstitutional as special legislation is without merit. The statutes permitting all counties which were third class counties in November of 1967 to use the provisions of the Third Class County Jury Selection System until January 1, 1969, rather than being special legislation, as the appellant contends, were designed to ease the special transition problems of counties which were in the midst of compiling official jury lists for 1968 in accordance

with the provisions applicable to third class counties when their classification was changed.

Next, appellant challenges the legitimacy of Rule 1104(b) of the Pennsylvania Rules of Criminal Procedure, which provides in part: ". . . [A] challenge to the array shall be made not later than five days before the first day of the week the case is listed for trial of criminal cases for which the jurors have been summoned and not thereafter, and shall be in writing, *specifying the facts* constituting the ground for the challenge." (Emphasis supplied.)

This rule provided the basis for the court's dismissal of appellant's oral motion challenging Montgomery County's jury-selection procedures but specifying no facts in support of the motion. This motion was made immediately before the jury was selected. The court pointed out that the motion was not made in conformity with the rules, but did not immediately dismiss the motion. After the jury was selected, appellant's counsel repeated his challenge, this time emphasizing that only three of the one hundred forty-nine people on the jury panel were Negro, approximately two percent, while the Negro population of Montgomery County was approximately six to eight percent, and none of the sixty-six prospective jurors examined was under thirty-five. The court then dismissed appellant's motion, refusing to delay the trial for the holding of a hearing to determine the constitutionality of the jury selection procedures.

Appellant argues that Rule 1104(b), as interpreted by the trial court to require pretrial filing and pretrial specification of facts in support of the motion, prevents the defense from ever raising the question because there is no possible way for a defendant to specify the facts constituting the grounds for the challenge until the jury panel is actually seen.

However, the characteristics of one particular panel are not the type of facts which constitute grounds for a challenge. Rather, since the challenge must be to the selection procedures themselves, and not to the composition of a particular panel, the facts must provide evidence indicating either that the procedures as designed or implemented are likely to result in juries unrepresentative of a cross-section of the community, or that the procedures have, in fact, continuously failed to represent certain identifiable population groups over a period of time. Such facts are as available before trial as after the jury has been selected. These are facts concerning the proportion of the county's population represented by various specified population groups, here Negroes and people under thirty-five, the frequency with which persons from these groups appear on the jury lists, and the methods by which these lists are selected. A hearing to determine whether the facts presented constitute sufficient grounds for a successful challenge to the jury selection procedure is by necessity a complex event. If a defendant wishes to delay trial for the holding of such a hearing, Rule 1104(b) requires him to make his request, alleging sufficient grounds therefor, before trial so that prospective jurors and witnesses are not unnecessarily inconvenienced. Since appellant's counsel did not adhere to this rule, appellant cannot now complain.

Appellant makes one more allegation of trial error. He contends that the conduct of the trial judge deprived him of a fair trial by subtly conveying to the jury the court's own views on this case, particularly on the credibility of the witnesses. Appellant emphasizes that although the trial court never questioned any of the Commonwealth's witnesses, it did begin to question an alibi witness for the defense, and at one point made what appellant's brief characterizes as an "ex-

tended grimace of surprise" at one answer made by the witness.

In response to appellant's counsel's motion for a mistrial, the court responded (in a colloquy in chambers) : "I am not aware of any facial expressions that I made at all. I did look up when he said that—because it was so obviously contrary to what Freddy Butler had said."[1]

The court then went on to explain: "I looked up and looked at him. It is my opinion that the Trial Judge has a right, if people are lying, as he believes, to examine him. I did examine him when I heard this discrepancy. It immediately, obviously indicated to me that he was not telling the truth, that he was there to create an impression which he was seeking to do."

We do not agree with the trial court's interpretation of his powers in the trial of a case. If a judge followed the practice which this judge advocated here, a practice of questioning every witness whom the judge did not believe to be telling the truth, while questioning no other witnesses, it would be tantamount to telling the jury his views of which witnesses were to be believed. Credibility is solely for the jury. Just as a trial judge is not permitted to indicate to the jury his views on the verdict that they should reach in a criminal case, *Commonwealth v. Motley*, 448 Pa. 110, 289 A. 2d 724 (1972), *Commonwealth v. Archambault*, 448 Pa. 90, 290 A. 2d 72 (1972), similarly he is not permitted

---

[1] "Every time the Judge moves his head, arms or body the jurors watch him. They look at his face. In the minds of the jurors, the judge is supreme. He can do no wrong. Jurors seek to avoid the displeasure of the judge. They are reluctant to decide questions of fact contrary to what they believe the views of the judge to be." Conner, The Trial Judge, His Facial Expressions, Gestures, and General Demeanor—Their Effect on the Administration of Justice, 6 Am. Crim. L. Q. 175, 177 (1968).

to indicate to a jury his views on whether particular witnesses are telling the truth.

What we said in *Commonwealth v. Myma*, 278 Pa. 505, 123 A. 486 (1924), is still pertinent: "Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination. The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at the counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of justice. It has a tendency to take from one of the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence." *Commonwealth v. Myma, supra,* at page 508.

Because of the problems which may stem from too active participation by a judge in trial proceedings, we recommended in *Commonwealth v. Myma, supra,* and we still recommend, that each trial judge adhere to Canon 15 of the American Bar Association's Canons of Judicial Ethics:

"A judge may properly intervene in a trial of a case to promote expedition, and prevent unnecessary waste of time, or to clear up some obscurity, but he should bear in mind that his undue interference, impatience, or participation in the examination of wit-

nesses, or a severe attitude on his part toward witnesses, especially those who are excited or terrified by the unusual circumstances of a trial, may tend to prevent the proper presentation of the cause, or the ascertainment of the truth in respect thereto.

"Conversation between the judge and counsel in court is often necessary, but the judge should be studious to avoid controversies which are apt to obscure the merits of the dispute between litigants and lead to its unjust disposition. In addressing counsel, litigants, or witnesses, he should avoid a controversial manner or tone.

"He shall avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment."

If the trial court had actually followed the procedures he advocated in chambers, this case would require reversal. However, the record indicates that he did not do so. Instead, the court refrained from any improper intervention during the trial. The alleged "grimace," the existence of which is categorically denied in the record, is not enough to entitle appellant to a new trial.

Judgment of sentence affirmed.

Mr. Justice EAGEN concurs in the result.