## Commonwealth *v.* Dancer, Appellant.

222

Argued January 11, 1973. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Daniel H. Shertzer,* for appellant.

*Ronald L. Buckwalter,* Assistant District Attorney, with him *Henry B. Rutherford,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE EAGEN, May 23, 1973:

This appeal is from the judgment of sentence imposed upon Mack Ceasar Dancer following his conviction by a jury of murder in the second degree. We affirm.

The Commonwealth's evidence established the following facts:

At approximately 12:30 a.m. on the morning of October 23, 1971, Albert Tatum, brandishing a knife, entered the house of Suzy Hayes with the announced purpose of killing Elsie Turner, Mrs. Hayes aunt. Tatum, evidencing some degree of intoxication, searched about briefly for Mrs. Turner and when asked to leave, swung at the Hayes woman with his knife. At this point, Dancer, the appellant, who had been making repairs to a room of the house, armed himself with a knife and intervened, scuffling briefly with the victim. As the door was locked against him, Tatum said, "Mack you cut me" and "I'll be back."

About 2:30 a.m. Tatum's body was discovered by the Lancaster police on the sidewalk about thirty yards from the Hayes' house. Medical examination revealed he had been dead from one and a half to two hours, and death was caused by a single puncture wound in the left mid-thoracic region which resulted in massive hemorrhaging.[1]

During the course of the police investigation, a somewhat equivocal statement was obtained from Dancer which was later admitted in evidence at trial. Therein, Dancer admitted the altercation with Tatum, saying that after the latter had thrust his knife at Mrs. Hayes, he [Dancer] "made a hit at him [Tatum] with my knife. I don't know if he was hit or not, I did not stab him. I made a cutting motion with the knife. It

---

[1] The coroner testified that a knife or other sharp instrument had pierced the heart and caused extensive bleeding into the chest cavity.

was all over then, he said, 'I'll be back.' When he walked out the front door he said, 'You cut me, I'll get you.'"

Although two issues are presented by appellant for determination, only one of them is properly before this Court. In support of his request for a new trial, appellant contends: (1) the lower court committed error in permitting the Commonwealth to impeach its own witness, Mrs. Hayes, by introducing on redirect examination a prior inconsistent statement; and (2) the court compounded this error by presenting the contents of the statement in its charge as substantive evidence.

We need not reach the merits of the second contention. A study of the record discloses that no specific exception to the challenged instruction was made of record. More importantly, however, this alleged assignment of error was not raised in the motion for a new trial or at any time in the court below. Under such circumstances, this question may not be raised now. *Commonwealth v. Agie*, 449 Pa. 187, 296 A. 2d 741 (1972); *Commonwealth v. Myers*, 439 Pa. 381, 266 A. 2d 756 (1970).

The facts relative to the other assignment of error are these:

Mrs. Hayes was called as a Commonwealth witness and recounted the events which culminated in the affray between Dancer and Tatum. She said she saw Dancer make a stroking motion alongside decedent's left leg but did not notice a knife in Dancer's hand until after the door was shut against decedent. Asked by the district attorney whether she saw Dancer withdraw a knife from Tatum's chest, the witness answered, "No, whatever happened was so fast. No I didn't. No, I can't say that I did." Questioned whether a knife was anywhere near Tatum's chest, Mrs. Hayes responded, "Not that I saw. Mack was between me and him. I was standing behind him and I don't know what took

place when they went together. But I know that I saw the two of them go together." She further testified that when the combatants drew apart, she thought she saw a spot of blood near the decedent's stomach and heard Tatum say, "Mack you cut me." The district attorney then asked Mrs. Hayes if her testimony was in any way different from statements made to the police who interviewed her on October 23rd. The witness said she could not remember what she had told the police but said that she didn't think she had left anything out in her present account. On that note, direct testimony was ended.

On redirect, Mrs. Hayes was asked if she had ever given a written statement to the police and she readily admitted doing so. Over defense counsel's objection, the witness was then directed to read aloud the following portion of this statement: "At this time, everything happened so fast but I saw Albert and Mack Dancer come together and then I saw Mack pull his knife out of Albert's chest and I saw blood on the knife." Afterwards, Mrs. Hayes said: "I don't remember making that statement." It is contended permitting this cross-examination and impeachment of Mrs. Hayes was prejudicial error.

The fundamental rule is that "[i]t is within the sound discretion of the trial court to decide whether or not counsel may exercise the right of cross-examining his own witnesses and its action will not be reviewed by the appellate courts unless there is an abuse of discretion." *Commonwealth v. Conard*, 206 Pa. Superior Ct. 33, 42, 211 A. 2d 14 (1965); cert. denied, 384 U.S. 920 (1966). Instantly, we feel there was an abuse of discretion.

The general principles of law pertaining to impeachment of one's own witnesses were discussed at length in *Commonwealth v. Knudsen*, 443 Pa. 412, 278 A. 2d 881 (1971). There we said: "The courts of this Com-

monwealth have been liberal in allowing a party to cross-examine his own witness when it is believed that the interest of truth and justice so require. E.g., Commonwealth v. Smith, 424 Pa. 544, 227 A. 2d 653 (1967); Commonwealth v. Turza, 340 Pa. 128, 16 A. 2d 401 (1940); Commonwealth v. Lehman, 309 Pa. 486, 164 Atl. 526 (1932); Commonwealth v. Spardute, 278 Pa. 37, 122 Atl. 161 (1923); Commonwealth v. Reeves, 267 Pa. 361, 110 Atl. 158 (1920); Commonwealth v. Delfino, 259 Pa. 272, 102 Atl. 949 (1918); Commonwealth v. Deitrick, 221 Pa. 7, 70 Atl. 275 (1908). In all the cited cases, however, the witness sought to be cross-examined had made statements at trial which were directly contradictory to statements the witness had made earlier, and the in-court testimony, if believed, was such as to aid the opposing party. 'On the other hand, our courts have been loath to allow cross-examination for purposes of impeachment by use of prior statements when a witness states that he does not know or that he cannot remember. This is so for the reason that such an in-court declaration does not harm the calling party nor aid the opposing party. [citations omitted] Hence, when a witness claims he does not know or cannot remember, the prior statements should not be introduced because of the danger that the prior statements will be considered as substantive evidence by the jury.' " 443 Pa. at 414-15. See also *Commonwealth v. Stafford*, 450 Pa. 252, 299 A. 2d 590 (1973).

The sum and substance of Mrs. Hayes' testimony was that she did not see the stabbing because her line of vision was blocked. While such testimony may have been disappointing, it was certainly not prejudicial or injurious to the Commonwealth's case.[2] As was

---

[2] "Since the purpose of the cross-examination and impeachment is, then, to induce the jury to disbelieve the testimony of the witness, —there must be something in the witness' testimony, which, if not disbelieved by the jury will be hurtful or injurious to the party

the case in *Knudsen,* supra, there was no substantive evidence in her trial testimony which could have been neutralized by the use of her pretrial statement.

We are convinced, however, that this error was harmless in the face of the overwhelming evidence of guilt.

There was ample evidence of an affray between appellant and decedent involving knife play. Mrs. Hayes testified that she thought she saw blood on Tatum's stomach when the two men drew apart and then noticed that Dancer too had a knife in his hand. There was general agreement that Tatum told Dancer, "You cut me, I'll be back," a res gestae declaration. Tatum's body was found at about 2:30 a.m. on the sidewalk thirty yards from the spot where the fight took place. The deputy coroner estimated death had occurred one and a half to two hours earlier. Mrs. Hayes placed Tatum's visit to her house at 12:30 to 12:45 a.m. and judging by the record he was there for only a few minutes. The *only* evidence of trauma to the body was the single puncture wound of the chest caused by a sharp instrument. Detective Benedict of the Lancaster Police Department related finding the victim's wallet on his person containing identification papers and $71 in cash. He also testified that police found a small pocketknife with an approximately two and one-half inch blade in Tatum's jacket. The knife was in a closed position.

These latter two pieces of evidence seem to exclude any theory that Tatum was killed after he left the Hayes house as a part of a robbery attempt or that he had fallen on his own knife.

Judgment affirmed.

---

calling him." *Selden v. Metropolitan Life Insurance Company,* 157 Pa. Superior Ct. 500, 508, 43 A. 2d 571 (1945).

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I agree with the majority's holding that it was error for the trial court to have allowed the Commonwealth to cross-examine and impeach its own witness by use of a prior statement, where ". . . the witness *cannot recall or remember matters which* [she] spoke of with certainty before trial. . . ." *Commonwealth v. Stafford,* 450 Pa. 252, 264, 299 A. 2d 590, 596 (1973) (ROBERTS, J., concurring). See also *Commonwealth v. Knudsen,* 443 Pa. 412, 414-15, 278 A. 2d 881, 883 (1971); *Commonwealth v. Turner,* 389 Pa. 239, 256, 133 A. 2d 187, 195 (1957). However, I must dissent from the majority's conclusion that the instant error was harmless. *Stafford,* supra.

On this record, I cannot ". . . declare a belief that it [the error] was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967). See *Harrington v. California,* 395 U.S. 250, 251, 89 S. Ct. 1726, 1727 (1969); *Schneble v. Florida,* 405 U.S. 427, 92 S. Ct. 1056 (1972). The evidence against appellant, excluding the erroneously admitted statement of Mrs. Hayes (the Commonwealth's chief witness), was exclusively circumstantial—absent Mrs. Hayes' prior statement, there was no direct testimony that appellant inflicted the mortal wound. The evidence against appellant was not so "overwhelming" (as the majority contends), and the prejudicial effect of the error was *not* so insignificant by comparison, ". . . that it is clear beyond a reasonable doubt that . . . [the error] was harmless. . . ." *Schneble,* supra at 430, 92 S. Ct. at 1059.

Here, there is a reasonable possibility that the error might have moved "the minds of the average jury" towards conviction. Accordingly, I cannot state, beyond a reasonable doubt, that the error was harmless. *Harrington,* supra at 254, 89 S. Ct. at 1728. Although the case against appellant was reasonably strong, circum-

stantially, it nevertheless was a case in which "honest, fair-minded jurors might very well have brought in not guilty verdicts." *Chapman,* supra at 26, 87 S. Ct. at 829.

Mr. Justice NIX and Mr. Justice MANDERINO join in this dissenting opinion.

---

### DISSENTING OPINION BY JUSTICE MANDERINO:

I join in the dissenting opinion of Mr. Justice ROBERTS, but I should like to comment further about the majority's conclusion that the evidence of murder was overwhelming. I disagree completely with that conclusion. The evidence of murder is not overwhelming—there is almost *no evidence* of murder.

The majority focuses on the *prior inconsistent statement* of Suzy Hayes. Even if we accept the Hayes statement as substantive affirmative proof, her statement *does not* establish murder. According to the majority, Suzy Hayes said "At this time, everything happened so fast but I saw [the victim] and [the appellant] come together and then I saw [the appellant] pull his knife out of [the victim's] chest and I saw blood on the knife." That statement in the context of the other *uncontradicted testimony* still leaves a very serious doubt as to whether murder occurred. The other *uncontradicted testimony* is that the victim entered the home of Suzy Hayes with the *announced purpose* of killing the aunt of Suzy Hayes. The victim, according to the majority, evidenced some degree of intoxication searched about briefly for the aunt and when asked to leave, swung at Suzy Hayes with his knife. At this point, the appellant, who had been making repairs to a room of the house, armed himself with a knife and intervened, scuffling briefly with the victim. According to the facts of the majority, which were not contradicted, the appellant intervened to stop a man who was

brandishing a knife and swung it at another human being in the home of that other human being, Suzy Hayes. A more classic example of justifiable homicide by reason of defense of person could not be found. The alleged prior inconsistent statement of Suzy Hayes only corroborates the other evidence that the appellant stabbed the victim *in defense of a human being.* The appellant was working in the home of Suzy Hayes when the victim showed up intoxicated with an announced intention to kill and swinging a knife. Six children were asleep in the home at the time the aggressor arrived. The appellant came to the aid of Suzy Hayes which can only be described as an heroic act in the face of the knife being brandished and swung by the victim. In the ensuing scuffle which "happened so fast", according to the relied-on prior inconsistent statement, the appellant stabbed the victim. What evidence is there that the appellant did not act as a completely reasonable man? If anything, the appellant acted with a heroism in defense of another human being. It was the kind of heroism that we don't expect from everybody, but for which the appellant should be given a medal and not sent to jail for murder.

Can it be said that the ignoring of the uncontradicted facts by the jury did not happen because Suzy Hayes was caught in an alleged inconsistency? I cannot so conclude. The error pointed out by the majority was not harmless.