340 A.2d 447

**COMMONWEALTH of Pennsylvania**

v.

**Nathaniel MOORE, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 19, 1974.

Decided July 7, 1975.

232

Lawrence J. Ruggiano, Lancaster, for appellant.

D. Richard Eckman, Dist. Atty., Michael H. Ranck, Asst. Dist. Atty., Lancaster, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

EAGEN, Justice.

On September 16, 1972, at 12:24 a. m., Edward Bruce Wiker was fatally shot while in the Jefferson Tavern located in Lancaster, Pennsylvania. Earlier that evening an altercation had taken place at the tavern during which one Jehu Johns was stabbed. Approximately one hour later, several friends of Johns proceeded to the tavern armed with a shotgun. Another disturbance developed following which Nathaniel Moore, the appellant herein, and Ricky Mack exited from the tavern carrying a shotgun. They walked to the opposite side of the street and one of them fired a shot through the front window of the tavern, killing Wiker.

The police, based on the descriptions given them by eyewitnesses, to the shooting, determined it was Moore who had fired the fatal shot and placed him under arrest. After a jury trial, Moore was found guilty of mur-

der in the first degree. Post trial motions were denied and a sentence of life imprisonment was imposed. This direct appeal followed.

A number of trial errors are asserted on this appeal. We find none meritorious and will, therefore, affirm the judgment. These claims of error will be discussed seriatim.

Initially, it is urged the trial court erred in permitting the Commonwealth to plead surprise and impeach its own witness through introduction of a prior inconsistent statement. The witness, Joseph Nolley, was called by the Commonwealth with the expectation that he would reiterate his prior statement implicating Moore as the perpetrator of the shooting. However, when asked whether Moore or Ricky Mack was carrying the shotgun as they exited from the tavern and crossed the street, Nolley stated he did not know. The Commonwealth was then permitted to plead surprise and, over defense counsel's objection, cross-examined Nolley concerning an earlier statement given to the police. During the course of this cross-examination, Nolley was directed to read aloud the following portion of his earler statement, "He was going, that is when Nate [the appellant] grabbed the gun and ran across the street alongside the Moose Hall, Moose building and fired the gun through the window." It is contended permitting this cross-examination and allowing Nolley's prior inconsistent statement to be read to the jury, was reversible error.

■■ The general principles of law pertaining to the impeachment of a witness by the party calling him were discussed at length in *Commonwealth v. Knudsen*, 443 Pa. 412, 414–415, 278 A.2d 881 (1971). See also *Commonwealth v. Bynum*, 454 Pa. 9, 309 A.2d 545 (1973); *Commonwealth v. Tucker*, 452 Pa. 584, 307 A.2d 245 (1973); *Commonwealth v. Dancer*, 452 Pa. 221, 305 A.2d 364 (1973); *Commonwealth v. Stafford*, 450 Pa. 252, 299 A.2d 590 (1973). We therein recognized that courts of

this Commonwealth have been liberal in allowing a party to cross-examine his or her own witness when truth and justice so require. However, we indicated that cross-examination of a witness by the party calling him through introduction of a prior inconsistent statement should be limited to those instances where the witness, at trial, has made statements which aid the opposing party or harm the calling party. The prior statement is not admitted as substantive testimony but solely for the limited purpose of establishing the inconsistency. Thus, where the witness has made no assertions which stand in contradiction to statements the witness has made earlier, but merely claims he or she does not know or cannot remember, the prior statements should not be introduced. No permissible evidentiary purpose is served by introducing the prior statements and to do so is error. See generally *Commonwealth v. Dancer*, supra, 452 Pa. at 226 n. 2, 305 A.2d at 367 n. 2.

██ Instantly, the inability of Nolley to answer the question put to him did not prejudice or otherwise harm the Commonwealth's case, nor did it necessarily advance the defense. A lapse of memory, standing alone, is not sufficient to justify a cross-examination of one's own witness by introduction of prior inconsistent statements. *Commonwealth v. Knudsen*, supra. While the Commonwealth may have been disappointed that Nolley failed to repeat his earlier, out-of-court assertions, this does not furnish an adequate basis upon which to permit a cross-examination. *Commonwealth v. Dancer*, supra, 452 Pa. at 226–227, 305 A.2d at 366–367. Nevertheless, after a review of the record, we are convinced this error was harmless.

Unlike the situations presented in the cases of *Commonwealth v. Bynum*, supra [admitted out-of-court statement which was the only substantive evidence placing defendant at the scene of the crime], and *Commonwealth v. Tucker*, supra [admitted out-of-court statement given by

only eyewitness to the crime], here there was clear and relevant testimony from disinterested bystanders to establish that Moore fired the fatal shot. Raymond Lapp, a spectator from a third-floor window overlooking the Jefferson Tavern, testified he witnessed the shooting. He stated that two black men, one wearing a black leather jacket and the other wearing bib overalls, crossed the street outside of the tavern. He further testified that the man wearing the black leather jacket had a shotgun in his possession and, after crossing the street, fired a shot in the direction of the tavern. While Lapp was unable to see the face of the man in the black leather jacket, other testimony established that Moore was so dressed. Anne Axe, another Commonwealth witness, testified she saw Moore and Ricky Mack in the vicinity of the tavern prior to the shooting. She said Moore was wearing a black leather jacket and Ricky Mack was wearing bib overalls.[1] She also stated she heard gunshots and, immediately thereafter, saw Moore with the shotgun. Randy Johnson, a member of the group which returned to the tavern, testified he saw Moore standing in the middle of the street outside the tavern with the shotgun at his hip.

In view of the testimony of these completely disinterested witnesses fixing Moore as the killer, the trial court's error in permitting the Commonwealth to cross-examine Nolley and to make evidentiary use of his pretrial statement was of little, if any, consequence. Moreover, any harm to Moore occasioned by the error was further minimized by Nolley's continued adherence to his initial trial testimony that he was unsure whether Moore or Ricky Mack had the shotgun. See *Commonwealth v. Stafford,* supra; *Commonwealth v. Knudsen,* supra.

---

1. Moore, in his testimony, further corroborated the observations of Lapp and Axe. He admitted crossing the street with Ricky Mack immediately prior to the shooting and conceded that Ricky Mack was dressed in bib overalls while he was wearing a black leather jacket.

■ Next, it is contended the trial court erred in charging the jury that Moore could be convicted as a principal in the second degree. Similarly, it is contended the trial court erred in instructing the jury that two of the Commonwealth's witnesses were, in the court's opinion, accomplices of Moore. However, there were no specific objections to the alleged errors even though the trial court, after its charge and before the jury retired for deliberation, asked if counsel wished to make particular exceptions. Pursuant to Rule 1119(b) of the Pennsylvania Rules of Criminal Procedure, 19 P.S.Appendix,[2] failure to make specific objections to the court's charge bars appellant from asserting the alleged errors on appeal. *Commonwealth v. Carr*, 459 Pa. 262, 328 A.2d 512 (1974); *Commonwealth v. Yount*, 455 Pa. 303, 314 A.2d 242 (1974). See also *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

■ Next, it is contended the trial court erred in not permitting the appellant to impeach the credibility of Commonwealth witnesses by use of alleged juvenile records. However, a review of the record shows this issue was not raised in the post trial motions, consequently it was not properly preserved for appellate review. *Commonwealth v. Hill*, 453 Pa. 349, 310 A.2d 88 (1973); *Commonwealth v. Bittner*, 441 Pa. 216, 272 A.2d 484 (1971); *Commonwealth v. Myers*, 439 Pa. 381, 266 A.2d 756 (1970).

■ Additionally, it is argued the trial court erred in admitting certain opinion testimony given by a ballistics expert. The witness, after comparing the markings found on the bullet recovered from the victim with those found on a bullet subsequently fired from the shotgun

2. Rule 1119(b) of the Pennsylvania Rules of Criminal Procedure provides:
"No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate."

admitted into evidence, stated the fatal bullet *could* have been fired from the shotgun. The failure to state conclusively that the shotgun was the murder weapon, Moore contends, should have rendered the testimony inadmissible. We disagree. A similar argument was advanced and rejected by this Court in *Commonwealth v. Pierce,* 453 Pa. 319, 309 A.2d 371 (1973). Furthermore, Moore suffered no harm as a result of the expert's testimony. At no point during the trial did the defense contend or even suggest that the fatal bullet was fired from a weapon other than the shotgun admitted into evidence. See also *Commonwealth v. Newsome,* 462 Pa. 106, 337 A.2d 904, filed May, 1975.

Finally, it is contended the trial court erred in not granting defense counsel's challenges for cause as to certain prospective jurors whom, it is alleged, had already formed an opinion concerning the guilt of the accused.[3] The denial of these challenges for cause, it is argued, forced defense counsel to prematurely utilize some of its peremptory challenges.

■■ Even assuming the challenges for cause should have been sustained, the error was harmless. All of the jurors involved were eventually dismissed from serving on the jury via a defense peremptory challenge. Moreover, the trial jury was completed without the defense exercising all permissible peremptory challenges. It is well-settled that when, as here, the defense does not exhaust its peremptory challenges, it is harmless error to overrule a challenge for cause which should have been sustained, if the juror is actually excluded by a peremptory challenge. *Commonwealth v. Moon,* 389 Pa. 304,

---

**3.** Two of these prospective jurors stated they believed Moore must have done something wrong or he wouldn't be on trial. The third prospective juror testified the defense would have to produce favorable testimony for him to find Moore not guilty. However, on further inquiry, each juror stated he believed a person accused of crime is innocent until proven guilty.

308, 132 A.2d 224 (1957); *Commonwealth v. McGrew,* 375 Pa. 518, 526, 100 A.2d 467 (1953); *Commonwealth v. Bibalo,* 375 Pa. 257, 265, 100 A.2d 45 (1953).

Judgment affirmed.

ROBERTS, J., filed a dissenting opinion in which MANDERINO, J., joins.

ROBERTS, Justice (dissenting).

The majority correctly holds that the admission of the witness's prior statement was erroneous. Nevertheless, it refuses to reverse appellant's conviction because it resolves that the error was harmless. Because I cannot conclude beyond a reasonable doubt that the error did not contribute to the conviction, I must dissent. See *Commonwealth v. Padgett,* 428 Pa. 229, 237 A.2d 209 (1968); *Commonwealth v. Pearson,* 427 Pa. 45, 233 A.2d 552 (1967); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); see especially *Commonwealth v. Tucker,* 452 Pa. 584, 589–91, 307 A.2d 245, 248–49 (1973); see also *Commonwealth v. Bynum,* 454 Pa. 9, 12–13, 309 A.2d 545, 547 (1973); *Commonwealth v. Thomas,* 459 Pa. 371, 387, 329 A.2d 277, 284 (1974) (dissenting opinion of Roberts, J.); *Commonwealth v. Dancer,* 452 Pa. 221, 228–29, 305 A.2d 364, 367–68 (1973) (dissenting opinion of Roberts, J., joined by Nix & Manderino, JJ.); *Commonwealth v. Knudsen,* 443 Pa. 412, 416, 278 A.2d 881, 884 (1971) (dissenting opinion of Roberts, J., joined by Eagen, J.).

The Commonwealth called as a witness Joseph Nolley, expecting that he would testify that he observed appellant, a man he apparently knew prior to the incident, fire the fatal shot. However, when the Commonwealth asked the witness if he saw who had the rifle at the time of the incident, Nolley replied that he did not know. The Commonwealth pleaded surprise and was permitted to im-

peach the witness with the following statement the witness had given to the police at the time of the crime:

"He was going, that is when Nate [appellant] grabbed the gun and ran across the street along side the Moose Hall, Moose building, and fired the gun through the window."

I cannot comprehend how the majority can conclude beyond a reasonable doubt that this devastating revelation was harmless.* Especially in light of the less definite testimony of the other disinterested witnesses, I cannot fairly say that I believe beyond a reasonable doubt that honest, fair-minded jurors, charged with determining if appellant was guilty beyond a reasonable doubt might not have brought in a different verdict had they not heard the improper statement. See *Chapman,* supra.

The limitations on the use of a witness's prior statements, like most of our rules of evidence, are designed to assure fair trial. Courts severely undercut the effectiveness of such rules when they pay lip-service to them while refusing to enforce them under the rubric of harmless error. I would reverse appellant's conviction and remand the case to the court of common pleas for a new trial.

MANDERINO, J., joins in this dissent.

---

* The majority maintains that "any harm to Moore occasioned by the error was further minimized by Nolley's continued adherence to his initial trial testimony that he was unsure whether Moore or [his accomplice] had the shotgun." Ante at 450. I cannot agree with this assertion. When a witness adheres to his testimony that he did not know who committed a crime in question, the defendant is without a means to challenge the trustworthiness of the prior statement since he can not cross-examine the witness as to the witness's ability to perceive the incident and to remember the information contained in the statement at the time the statement was made. Thus, in his situation, the admission of the statement has great potential for unfairness.