378 A.2d 812

**COMMONWEALTH of Pennsylvania**

v.

**Whalen LAWS, Jr., Appellant.**

Supreme Court of Pennsylvania.

Argued April 1, 1977.

Reassigned June 1, 1977.

Decided Oct. 7, 1977.

John M. Elliott, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Gale Barthold, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

ROBERTS, Justice.

At about 11:30 p. m., March 2, 1974, an altercation broke out between two rival gangs after members of one gang

arrived at a party attended by members of the other. During the fighting which followed John Alicea received a fatal knife wound in the chest. Appellant, Whalen Laws, Jr., was charged with the murder. Following a jury trial, appellant was convicted of murder of the second degree. Post-verdict motions were denied, and appellant was sentenced to seven to twenty years imprisonment. In this appeal,[1] appellant contends that the trial court, by its questioning of a witness and by its warning the witness of the consequences of perjury, improperly pressured the witness to change his testimony. We agree,[2] reverse judgment of sentence and grant appellant a new trial.

## I

During the presentation of the prosecution's case, Coy Coley III was called as a witness. Unexpectedly, Coley gave testimony favorable to the defense. In his testimony, he indicated that the person who stabbed the victim was not in the courtroom.[3] At appellant's preliminary hearing Coley

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1977).

2. Because we reverse on this ground, we need not address appellant's other claims that: 1) the court improperly denied appellant the right to call two witnesses to the stand; and 2) the court incorrectly summarized the evidence in its charge to the jury.

3. Asked by the prosecutor if, on the night of the killing, he saw the person who stabbed the victim, Coley responded, "All I know is a light skinned person." Coley, who had been a classmate of appellant's and had known appellant for four years, stated that he did not know the name of the light skinned person. The prosecutor then asked if the light skinned person was in the courtroom. Coley replied, "No. I didn't really see what happened." In response to further questioning, Coley testified that he saw the light skinned person come close to the victim immediately before the victim fell from the stab wound, but that he did not see any contact between the two. The prosecutor again asked if the light skinned person was in the courtroom. Coley answered, "I don't know." Upon examination by the court, Coley clearly stated that the person he saw come towards the victim immediately before the victim fell from the stab wound was not in the courtroom. See note 5, infra.

had identified appellant as the person who stabbed the victim.[4]

Over defense objection, the court questioned Coley in the presence of the jury about his testimony that he did not see the perpetrator in the courtroom.[5] The court then excused

4. The transcript of the preliminary hearing included the following testimony by Coley:

"Q. Just what did you see happen?
A. John Alicia [sic] ran up to Whalen and Whalen stabbed him.
Q. Who stabbed him?
A. Whalen.
Q. Do you see the man in court who stabbed John Alicia [sic]?
A. Right there. (Indicating.)
Q. Indicating the defendant."

5. "BY THE COURT:

Q. Mr. Coley, you've testified that after the fight in front of the house where the party was going, groups went up towards 57th and Willows and something happened at 57th and Willows involving your friend John Alicea. Is that correct so far?
A. Right.
Q. You testified at that point a light skinned colored person went within touching distance of John Alicea. And then they all ran up the hill. And John Alicea was on the ground—
A. Right.
Q. —stabbed, is that correct?
A. That's correct.
Q. Now, you were asked do you see the person you have so far described as a light skinned man that went within touching distance from John Alicea at that particular moment. You've given us an answer, first, 'No,' then you said, 'I don't know.'
A. The answer is no.
Q. The answer is no to what?
A. To the question you asked me.
Q. I don't understand.
MR. ELLIOTT [defense counsel]: I—
BY THE COURT:
Q. I asked you several questions. Now, what do you mean? No what?
MR. ELLIOTT: Objection, your Honor.
Q. You don't know?
A. The answer is no, I don't see the person.
Q. You don't see the person—
A. No.
Q. —that you described as a light skinned colored man five feet seven, is that correct?
A. Right, that's correct.
Q. Are you sure of that?
MR. ELLIOTT: I object.
THE COURT: Overruled.

the jury, and the prosecutor read Coley his testimony from the preliminary hearing. The court asked Coley if he recalled his prior testimony. Coley said he did. The court then asked Coley if he was afraid of anything on the day of trial, or if anything else was preventing him from telling the truth at trial. After Coley responded that there was nothing preventing him from telling the truth, the court, over defense objection,[6] warned Coley of the consequences of perjury.[7] The court then asked Coley if there was anything preventing him from telling the truth at trial, and asked Coley if any threats or promises had been made to induce him to testify untruthfully. Coley again answered no. The court asked Coley, twice, if he was telling the truth at trial. Coley answered both times that he was telling the truth. The court then asked Coley if he was saying that his testimony at the preliminary hearing was not truthful, and asked him if he wanted to read his testimony from the preliminary hearing again.

After Coley read his testimony from the preliminary hearing, the court again asked him if he was under any threats or pressure to testify as he did before the jury. Coley again answered no. The court then asked Coley, over defense objection, if what he told the jury was the truth and if he

BY THE COURT:
Q. Have you looked around the courtroom at everybody present in this courtroom?
   (Brief pause.)
A. Yes, I did.
Q. And your answer is still you do not see that man in this courtroom, is that correct?
A. I do not see the man."

6. The defense entered, and the court noted, a continuing objection to the court's questioning of the witness. Later ,during the court's questioning, the defense moved for a mistrial on the basis that the court's action unduly pressured the witness to change his testimony.

7. "BY THE COURT:
Q. Do you know what perjury is?
A. No.
Q. Perjury, generally speaking, means lying under oath. It's a crime in the Commonwealth of Pennsylvania punishable by both or either prison or fine or both. Do you understand that?
A. Right."

wanted to change that testimony now that he had read the notes of the preliminary hearing. Coley answered that he did not want to change his trial testimony. The court asked Coley, two more times, if he still maintained that his trial testimony was correct. After Coley answered affirmatively for the second time, the court asked Coley again if he wanted to change his trial testimony in any way. Coley said he did not. Before the jury was called back in, the court again warned Coley of the consequences of perjury.[8]

The Commonwealth then was allowed to cross-examine Coley in the presence of the jury, and the prosecutor read Coley his testimony from the preliminary hearing.[9] Coley recanted his trial testimony and adopted his testimony from the preliminary hearing identifying appellant as the person who stabbed the victim.

## II

In presiding over trial, the court has a paramount duty to maintain its impartiality, as well as a responsibility to respect the dignity of the witnesses. The court's power to question a witness, and to warn the witness of the consequences of perjury, should be used sparingly, and with great circumspection.[10] Efforts to clarify conflicting testimony

8. ". . . And I want him [Coley] to understand—that's the only reason I sent the jury out—a person who lies under oath is subjecting himself to perjury prosecution, which carries a substantially severe penalty, including prison—
   MR. ELLIOTT: Your Honor, I object.
   THE COURT: —and/or fines, if a person does lie under oath."

9. The prosecution may be allowed to cross-examine its own witness where the witness gives testimony at trial directly contradictory to statements the witness made earlier, and the witness' in-court testimony is injurious to the prosecution's case. *Commonwealth v. Dancer*, 452 Pa. 221, 305 A.2d 364 (1973).

10. See ABA Project on Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 6.4 (Approved Draft, 1972):
    "The trial judge should be the exemplar of dignity and impartiality. . . . When it becomes necessary during the trial for him to comment upon the conduct of witnesses . . . he should do so in a firm, dignified and restrained manner, avoiding repartee,

should normally be left to counsel, and the resolution of any conflicts should be left to the jury. When the court intervenes in this process, it may unduly influence the witness to shape his testimony to what the witness believes the court expects. Cf. *Commonwealth v. Myma*, 278 Pa. 505, 508, 123 A. 486, 487 (1924) ("It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court . . . . The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved.").

■ In *Commonwealth v. Myma*, Justice (later Chief Justice) Kephart stated for this Court:

> "The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality."

Id. Thus, the court may not question a witness in a manner which conveys to the jury the court's opinion on the merits, or doubts as to the credibility of the witness. *Commonwealth v. Williams*, 468 Pa. 453, 364 A.2d 281 (1976) (plurality opinion); *Commonwealth v. Butler*, 448 Pa. 128, 291 A.2d 89 (1972) (dictum); *Commonwealth v. Myma*, supra. The need to maintain impartiality also demands that the court exercise its authority with care, and refrain from questioning which may pressure a witness to testify in a particular way.

■ A review of the record convinces us that the trial court's questioning of Coley and the use of perjury warnings unduly pressured Coley to retract the testimony he initially gave at trial, and to adopt his testimony from the preliminary hearing. The court's questioning clearly conveyed the impression that the trial court did not believe Coley's trial testimony, and that Coley should adopt his testimony from the preliminary hearing. The court asked Coley five times if he was telling the truth at trial. The court repeatedly

> limiting his comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues."

asked Coley if any threats or promises caused him to testify falsely at trial, and asked Coley three times if he wanted to change or correct his testimony at trial. The court did not ask Coley if any threats or promises caused him to testify falsely at the preliminary hearing, or give Coley the opportunity to explain why he testified as he did at the preliminary hearing. The witness could have little doubt as to which testimony the court believed. The court's questioning, coupled with the use of perjury warnings, improperly pressured the witness to change his trial testimony to conform with his testimony at the preliminary hearing.

The Commonwealth argues that the court's action was harmless beyond a reasonable doubt. We cannot agree. Initially, Coley gave testimony favorable to appellant, indicating that someone other than appellant committed the killing. After extensive questioning by the court and admonishment on the consequences of perjury Coley retracted his earlier testimony and testified that he saw appellant stab the victim.

The Commonwealth relies on the testimony of two other witnesses. The first witness, Phillip Yant, testified that he saw appellant approach the victim. Although he did not see the stabbing, he did see the victim fall shortly thereafter. The second witness, Kevin White, testified that he saw appellant swing at the victim with a shiny object, after which the victim fell. White further testified that appellant later stated that he thought he stabbed the victim. According to White, appellant showed him the knife, and there was blood on the knife and on appellant's hands.

We cannot find that the court's action was harmless unless it was harmless beyond a reasonable doubt. See *Commonwealth v. Davis*, 455 Pa. 466, 317 A.2d 218 (1974); Salzburg, The Harm of Harmless Error, 59 Va.L.Rev. 988 (1973). The conclusion that the error was harmless beyond a reasonable doubt must be based on the court's determination, beyond a reasonable doubt, that the error did not affect the jury verdict. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); see *Commonwealth v.*

*Lippert,* 454 Pa. 381, 384, 311 A.2d 586, 588 (1973). The determination that the error did not affect the jury verdict may be reached "as a result of a finding that the impact of the challenged evidence is *de minimis,* or [that] the evidence supports a fact already established and . . . no longer in dispute." *Commonwealth v. Rodgers,* 472 Pa. 435, 460, 372 A.2d 771, 783 (1977) (concurring and dissenting opinion of Nix, J.); accord, *Commonwealth v. Hale,* 467 Pa. 293, 298, 356 A.2d 756, 758 (1976) (error cannot be harmless beyond a reasonable doubt if challenged evidence "was neither cumulative nor insignificant").

■■■■■ Clearly, the impact of Coley's change in testimony, viewed by itself, cannot be viewed as *de minimis.* The Commonwealth in effect argues Coley's testimony is merely cumulative of that given by the two other witnesses.[11]

The circumstances are extremely limited in which this Court may find that damaging testimony—such as Coley's

**11.** In *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973), this Court noted that United States Supreme Court cases allow an exception to the general rule that an error cannot be harmless unless the effect of the challenged evidence, viewed by itself, is *de minimis.* This exception is presented where the evidence is "so overwhelming," and the challenged error "so insignificant" by comparison, that it is clear beyond a reasonable doubt that the error was harmless. We have cautioned, however:

"It should be emphasized that a conclusion that the properly admitted evidence is 'so overwhelming,' and the prejudicial effect of the . . . error 'so insignificant' by comparison, that it is clear beyond a reasonable doubt that the error is harmless, is not to be arrived at lightly."

Id. at 178–79, 305 A.2d at 720; accord, *Commonwealth v. Hale,* 467 Pa. 293, 297, 356 A.2d 756, 758 (1976). Indeed, it has been suggested that an "overwhelming evidence" standard is inappropriate, and that in cases where the challenged evidence, viewed by itself, is not *de minimis,* it can be harmless only if it is merely cumulative of other, indisputable evidence. Field, Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale, 125 U.Pa.L. Rev. 15 (1976). In this case, however, we need not address the propriety of or any limitations on the "overwhelming evidence" standard. It is clear that the evidence in this case is not "overwhelming," nor is Coley's testimony "insignificant" by comparison. We cannot conclude that the court's error was harmless unless Coley's testimony was merely cumulative of other indisputable evidence.

testimony identifying appellant as the person who stabbed the victim—is harmless in light of other similar evidence. See generally Field, Assessing the Harmlessness of Federal Constitutional Error—A Process in Need of a Rationale, 125 U.Pa.L.Rev. 15 (1976). Professor Field has suggested that three requirements must be met before a court may conclude that improperly admitted evidence was merely cumulative of other evidence presented and therefore did not affect the jury verdict:

> "(1) There should be substantial similarity, in type of evidence and incriminating factual details, between the tainted evidence and the untainted evidence of which it is 'cumulative.' (2) The untainted evidence should be indisputable, either because the facts are in some way affirmatively accepted by the defendant or for other reasons. (3) Care should be taken that the 'untainted' evidence in no way derives from the tainted evidence."

Id. at 46.

We need not decide whether the testimony of Yant and White satisfies the first and third parts of this test, as it is clear that their testimony does not satisfy the second requirement: that their testimony be indisputable. The testimony of both witnesses was challenged on cross-examination, both as to ability to see the incident [12] and as to credibility.[13] Moreover, their testimony was contradicted by appellant and by appellant's parents.[14] In short, Coley's

---

12. At the time of the stabbing it was dark, and both witnesses were occupied with other matters. Yant was fighting with another youth. White was running away, carrying an injured friend, while being chased by members of a rival gang. He testified he looked back and saw appellant swing at the victim. The record also indicates that another youth present during the fighting was similar in appearance to appellant.

13. For example, White was a close friend of other youths, including one similar in appearance to appellant, who might have been blamed for the killing.

14. Appellant testified that he was present at the time the fighting began, but went home before the victim was stabbed. His mother testified that she saw no blood, knife, or torn clothing on appellant when he arrived. Appellant, his mother, and his father all testified

testimony did not merely "support a fact already established and . . . no longer in dispute." *Commonwealth v. Rodgers,* 472 Pa. 435, 460, 372 A.2d 771, 783 (1977) (concurring and dissenting opinion of Nix, J.).

Moreover, the damage to appellant from Coley's change in testimony arises not only from Coley's adoption of his preliminary hearing testimony identifying appellant as the killer, but from his retraction of his earlier testimony at trial. Indeed, Coley's testimony that the person who approached the victim immediately before the victim fell from the stab wound was not in the courtroom, if believed, would have strongly supported acquittal. The Commonwealth has not met its burden of proving that the trial court's error did not affect the jury verdict.[15]

Judgment of sentence reversed and a new trial granted.

Former Chief Justice JONES did not participate in the decision of this case.

> that after appellant arrived home, they saw the fighting from their front porch, and observed a youth, presumably the victim, fall.

**15.** The Commonwealth relies on *Commonwealth v. Moore,* 462 Pa. 231, 340 A.2d 447 (1975). In *Moore,* this Court held that it was error to allow the Commonwealth to cross-examine one of its witnesses on the basis of an earlier statement by the witness identifying Moore as the person who shot the victim. Nevertheless, this Court held that the error was harmless error because two other witnesses identified Moore as the person who fired the fatal shots, and because the improperly cross-examined witness adhered to his initial trial testimony that he was unsure whether Moore or another person fired the shots.

*Moore* is not applicable to this case for two reasons. First, in *Moore,* the two other witnesses were "disinterested witnesses" who were in a position to clearly observe the events. Here, the testimony of Yant and White was challenged as to possible bias and as to their ability to observe the stabbing. Second, and more important, the witness improperly cross-examined in *Moore* continued to adhere to his initial testimony. Moore relied on *Commonwealth v. Stafford,* 450 Pa. 252, 299 A.2d 590 (1973), and *Commonwealth v. Knudsen,* 443 Pa. 412, 278 A.2d 881 (1971), which held that improper cross-examination by the Commonwealth on the basis of prior statements is harmless error if the witness adheres to his initial testimony. Under *Stafford* and *Knudsen,* the error in *Moore* would have been harmless even in the absence of other witnesses. In this case, however, the witness did change his testimony, and we cannot conclude that his change in testimony did not affect the verdict.

NIX, J., filed a concurring opinion.

EAGEN, C. J., concurs in the result.

POMEROY, J., filed a dissenting opinion in which O'BRIEN, J., joins.

NIX, Justice, concurring.

My review of the record convinces me that the sequence of questioning by the court coupled with the allowance of the district attorney to proceed with the impeachment of the witness was unnecessarily excessive and intimidated the witness into changing his testimony. I therefore concur in the result reached by the majority.

At trial, Coy Coley, a Commonwealth witness, testified favorably for the defense when asked if he could identify the victim's assailant. This testimony contradicted that which he had given at the preliminary hearing. The district attorney repeated the question several times during the examination attempting to get the witness to change his mind. When this failed, the trial court intervened and questioned Coley before the jury, but the witness repeated that he did not see the assailant in the courtroom. At the request of the Commonwealth the jury was excused and the district attorney confronted the witness with his prior testimony. However, Coley again stated that he could not identify the individual. The judge then advised Coley concerning the nature of the crime of perjury and inquired whether the witness desired to change his trial testimony. Coley responded that he did not.[1] The Commonwealth then pleaded surprise and was granted permission to cross exam-

1. After extensive colloquy by the court with Coley concerning the crime of perjury and the prior inconsistent statements, the court concluded its interrogation of the witness as follows:
   Q. I'll ask you is what you've just said to the jury the truth or do you wish to change that in any way now that you've read those notes?
   MR. ELLIOTT: Objection
   THE COURT: Overruled
   Q. Do you understand my question?
   A. Right. No, I don't wish to change it.
   Q. You are staying by the answers you just gave to the jury right now?

ine the witness. Prior to recalling the jury, the court *again* instructed the witness on the crime of perjury. When trial resumed, the district attorney cross examined Coley concerning the prior inconsistent statements and as a result, the witness finally admitted that his previous identification of appellant as the assailant was correct.

While it may have been appropriate to use either impeachment by the district attorney or a warning by the trial judge concerning the crime of perjury[2] to ascertain which of the conflicting statements was correct, the combination of these two methods was, in my judgment excessive. The intensive questioning by the prosecutor and the court coupled with the perjury instruction and the impeachment clearly suggested to the witness that the court disbelieved his trial testimony. Thus, it is highly probable that Coley ultimately conformed his trial statements to his preliminary hearing testimony to satisfy what he perceived to be the court's expectations, rather than testify from his own recollection of the events which transpired. Because Coley's identification of Laws was crucial to the conviction, I concur in the award of a new trial.

POMEROY, Justice, dissenting.

Coy Coley purported to be an eyewitness to the incident which included the fatal stabbing of John Alicea. Coley

A. (No response.)
Q. Is that right?
A. Right.
Q. You still maintain then you did not see who did the stabbing and you do not see in this courtroom the person that you have described to the jury as a light skinned colored person or black person about five feet seven who went within touching distance of the victim, John Alicea? Is that your testimony today?
A. (No response.)
Q. Is it?
A. Right.
Q. And you do not wish to change that in any way whatsoever?
MR. ELLIOTT: Objection
THE WITNESS: No. I just want to get out of here.

2. I am in agreement with the view expressed by the majority that the court's power to warn a witness of the consequences of perjury should be employed sparingly and with utmost circumspection.

testified at the preliminary hearing and identified Whalen Laws as the person who stabbed the victim. Called at trial by the prosecution, Coley stated that he "didn't really see what happened" and that he did not know whether the stabber, a "light skinned person", was in the courtroom. The trial judge asked six questions of the witness in an attempt to clarify what Coley meant by the response "I don't know." The judge overruled a defense motion for a mistrial, observing that the witness had not been responsive and that his answers indicated he was either frightened or reluctant to get involved. In answer to another question from the court, the witness said flatly "I do not see the man." At this the Assistant District Attorney pleaded surprise and requested permission to cross-examine Coley with the testimony he had given at the preliminary hearing. This was allowed,[1] but after the court, out of the presence of the jury, had warned Coley concerning the crime of perjury and the attendant penalties for its commission.[2] When the trial was resumed before the jury and the Commonwealth cross-examined Coley on the basis of his testimony at the prelimi-

1. Appellant does not here challenge the propriety of allowing the Commonwealth to plead surprise and cross-examine its own witness.

2. There were two warnings. The first was as follows:
"BY THE COURT:
Q. Do you know what perjury is?
A. No.
Q. Perjury, generally speaking, means lying under oath. It's a crime in the Commonwealth of Pennsylvania punishable by both or either prison or fine or both. Do you understand that?
A. Right." N.T. Vol. II at 39.
The second mention of perjury was apparently not addressed directly to Coley:
"THE COURT: . . . And I want him [the witness] to understand—that's the only reason I sent the jury out—a person who lies under oath is subjecting himself to perjury prosecution, which carries a substantially severe penalty, including prison—
[DEFENSE COUNSEL]: Your Honor, I object.
THE COURT: —and/or fines, if a person does lie under oath. Now, he knows all this and he said what he said here today is what is the truth. . . . " N.T. Vol. II at 46.
There is no indication in the record as to whether Coley heard this second statement by the judge concerning perjury.

nary hearing, the witness then identified Whalen Laws as the person who had stabbed Alicea.

The Court holds that "the trial court's questioning of Coley and the use of perjury warnings unduly pressured Coley to retract the testimony he initially gave at trial, and to adopt his testimony from the preliminary hearing." Opinion of the Court, *ante* at 816. This conclusion involves some clairvoyance as to the witness' state of mind that I do not share; I am unable to see how the Court can reach such a finding with any confidence from this record, and therefore dissent.

The question, manifestly, concerns the permissible degree of involvement by the trial judge in the conduct of a case. I agree that the guidelines are well articulated by Mr. Justice, (later Chief Justice) Kephart, speaking for the Court in *Commonwealth v. Myma,* 278 Pa. 505, 507–08, 123 A. 486, 487 (1924):

"A judge in a jury trial has a right to interrogate witnesses. It sometimes becomes his duty to do so . . . But a judge may so conduct an examination as to make it an abuse of discretion, requiring a new trial.

"Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires. It is better to permit counsel to bring out the evidence and clear up disputed points on cross-examination unaided by the court; but where an important fact is indefinite or a disputed point needs to be clarified, the court may see that it is done by taking part in the examination. The practice of a judge entering into the trial of a case as an advocate is emphatically disapproved. The judge occupies an exalted and dignified position; he is the one person to whom the jury, with rare exceptions, looks for guidance, and from whom the litigants expect absolute impartiality. An expression indicative of favor or condemnation is quickly reflected in the jury box and at counsel table. To depart from the clear line of duty through questions, expressions or conduct, contravenes the orderly administration of jus-

tice. It has a tendency to take from the parties the right to a fair and impartial trial, as guaranteed under our system of jurisprudence. Judges should refrain from extended examination of witnesses; they should not, during trial, indicate an opinion on the merits, a doubt as to the witnesses' credibility, or do anything to indicate a leaning to one side or the other, without explaining to the jury that all of these matters are for them."

Following these principles, we have held that "[i]t is always the right and sometimes the duty of a trial judge to interrogate witnesses, although, of course, questioning from the bench should not show bias or feeling nor be unduly protracted." *Commonwealth v. Watts,* 358 Pa. 92, 96, 56 A.2d 81, 83 (1948). Accord, *Commonwealth v. Miller,* 442 Pa. 95, 97, 275 A.2d 328, 329 (1971); *Commonwealth v. Brown,* 438 Pa. 52, 63, 265 A.2d 101, 107 (1970); *Commonwealth v. Whyatt,* 235 Pa.Super. 211, 219–21, 340 A.2d 871, 876–77 (1975); *Commonwealth v. Lanza,* 228 Pa.Super. 300, 302–03, 323 A.2d 178, 179 (1974). The extent to which a trial judge chooses to question a witness is within the trial judge's discretion, and this Court will not find error in the exercise of such discretion except in cases of clear abuse. *Commonwealth v. Gockley,* 411 Pa. 437, 455, 192 A.2d 693, 702 (1963). When the questions asked by the trial judge are not too numerous and are designed "to clarify the witness's testimony to assist the jury in a more intelligent understanding of its import," *Commonwealth v. Miller, supra,* 442 Pa. at 97, 275 A.2d at 329, there is no error.

Viewed against the teaching of these cases, I am satisfied that the Court's finding of excessive and prejudicial questioning of Coy Coley by the trial judge is without adequate basis. As indicated above, Coley gave contradictory and ambiguous responses when asked by the Assistant District Attorney whether he saw the perpetrator of the crime in the courtroom. The total amount of questioning by the judge in front of the jury, comprising barely four pages of testimony, was not unduly protracted, nor did any of the questions

asked reflect feeling or bias on the part of the judge. This case is not one in which the trial judge took on the role of an advocate. *Commonwealth v. McCoy,* 401 Pa. 100, 162 A.2d 636 (1960); *Commonwealth v. Hales,* 384 Pa. 153, 119 A.2d 520 (1956). What the trial court was attempting to do was merely to clarify for the jury and himself what Coley meant when he responded "I don't know." Nothing in the nature of the questions or the manner in which they were asked conveyed to the jury the judge's views on whether Coley was telling the truth. See *Commonwealth v. Williams,* 468 Pa. 453, 364 A.2d 281 (1976); *Commonwealth v. Butler,* 448 Pa. 128, 291 A.2d 89 (1972). Thus I cannot agree that the trial judge abused his discretion in questioning Coy Coley as he did.

With respect to the perjury warning, appellant argues that by it the trial judge in effect was telling the witness that unless he identified appellant he would be charged with perjury. So interpreted, the warning allegedly coerced Coley into changing his prior testimony that he did not see in the courtroom the perpetrator of the killing. The majority accepts this argument. For the reasons which follow, I do not.

In *Mooney v. United States,* 320 F.Supp. 316 (E.D.Mo. 1970), the trial judge instructed the defendant's brother, outside the presence of the jury, on the possible consequences of perjury. The district court there held that "[s]ince the court's advice was given after [defendant's] brother had completely contradicted the testimony of the police officer, it is apparent that such instruction was necessary and well within the discretion of the trial judge." *Mooney, supra* at 318. See also *Commonwealth v. Antico,* 146 Pa.Super. 293, 323–24, 22 A.2d 204, 219 (1941). In the present case, the trial judge decided to advise Coley concerning perjury only after Coley had flatly contradicted the sworn testimony he himself had given at the preliminary hearing. In so deciding, I cannot believe that the trial judge abused his discretion.

Appellant characterizes the trial judge's remarks with regard to perjury as being, in effect, a threat of prosecution. The record is to the contrary. The judge never told Coley that he did not believe him and that if he did not change his testimony and identify appellant he would be prosecuted for perjury, nor did he imply as much. All the judge did was to state in general, neutral and declarative terms that to lie (i. e., tell an untruth knowingly) under oath is punishable by fine and imprisonment. Such a statement, in the context of this case, is properly to be construed as protective of the witness rather than as an attempt to induce a change in his testimony favorable to the prosecution.[3]

Finally, I cannot accept the Court's conclusion that the advice given by the trial judge to Coley "pressured" him into changing his testimony. Following his comments regarding perjury the trial judge questioned the witness, still out of the jury's presence, as to whether his preliminary hearing testimony or the testimony given before the jury was true, and whether or not he wished to change the latter in any way. Coley replied that he did not want to change his previous trial testimony. It was not until after his preliminary hearing testimony had been read to him for a second time and he had been cross-examined by the Assistant District Attorney in open court before the jury that Coley altered his trial testimony to coincide with what he had sworn to at the preliminary hearing. Under these circumstances, I am satisfied that no action of the trial judge intimidated Coley into identifying appellant as the assailant of the decedent. In short, the learned trial judge did not, in my view, overstep the bounds of propriety either in his questioning of the witness or his warning to him concerning perjury.

**3.** It is to be noted that Coley, upon inquiry by the judge, responded that he did not know what perjury was. In light of this, it is quite possible that Coley was operating under the mistaken belief that he was free to alter his testimony without running any risk of prosecution. Merely to inform a witness of the possible consequences of a particular course of action where, as here, the witness is ignorant of the consequences is not error.

My review of the record and briefs persuades me that the other issues raised by appellant are also without merit. Accordingly, I would affirm the judgment of sentence.

O'BRIEN, J., joins in this dissenting opinion.