J-S29026-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| RONALD ROGERS | |
| Appellant | No. 2799 EDA 2016 |

Appeal from the PCRA Order dated August 9, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011563-2009

BEFORE: LAZARUS, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SOLANO, J.:                    **FILED AUGUST 16, 2017**

Appellant Ronald Rogers appeals *pro se* from the order denying his first petition for relief filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546. After careful review, we vacate and remand for further proceedings.

On August 23, 2006, Appellant and Demetrius Hayes were involved in a shootout in which an unrelated bystander, William Green, was struck by an errant bullet and killed. On February 8-11, 2011, Appellant was tried by a jury. Tyrone Singleton, an eyewitness, testified for the Commonwealth. During the direct appeal of this case, we summarized his testimony as follows:

_____

[*] Former Justice specially assigned to the Superior Court.

Tyrone Singleton testified that he met with his friend, Demetrius Hayes, at the corner of 10th and Master Streets on August 23, 2006. He got into the passenger seat of Mr. Hayes' black Mercedez–Benz. Mr. Hayes was seated in the driver's seat. Mr. Hayes drove down 10th Street towards Thompson Street. Mr. Hayes pulled his vehicle over toward the curb to where Appellant was standing. While the vehicle was stopped, Mr. Singleton saw two (2) friends of Appellant's, Andre Holliday and Ronald Fenwick, walking on Thompson Street toward Mr. Hayes' vehicle. He saw another male he knew to be a friend of Appellant's across the street standing on the corner.

Mr. Singleton heard Appellant say to Mr. Hayes that "he needs $6,000.00 or it's on." Appellant then pulled a weapon from his waist and began firing. Mr. Singleton leaned over and heard bullets hitting the car. Mr. Hayes then pulled a gun that he had next to him on his seat and returned fire two (2) or three (3) times and then took off at a high rate of speed. Mr. Singleton continued to hear gun shots coming from outside the car as they pulled away.

Mr. Singleton had first testified at trial that Mr. Hayes fired first but then testified the next day that he said that because he was afraid of two (2) men who had been in the courtroom the day before and who were no longer present.

Mr. Singleton's statement to the detectives, testimony at the preliminary hearing and testimony at the trial of Demetrius Hayes were all consistent with his final trial testimony that [Appellant] pulled his weapon first and fired the first shot.

Mr. Singleton further testified that he and Mr. Hayes inspected the vehicle when they got to 10th and Popular Streets and saw that one of the tires was flat; there were three (3) bullet holes in the passenger side door; and, two (2) bullet holes in the passenger side air bag. Mr. Singleton went to retrieve his own vehicle and picked up Mr. Hayes. Later that day, they heard that a person known as "Ill Will" had been killed.

Mr. Singleton testified that prior to August 23, [2006], he had witnessed an incident where [Appellant] shot at Mr. Hayes' vehicle.

*Commonwealth v. Rogers*, No. 2834 EDA 2011, 2013 WL 11262994, *1-*2 (Pa. Super. June 19, 2013) (unpublished memorandum) (original brackets omitted), *appeal denied*, 83 A.3d 415 (Pa. 2014).

As noted above, Singleton had previously testified for the defense at the trial of Hayes and at Appellant's preliminary hearing on September 9, 2009. He had also given a statement to police detectives in relation to this case. In each instance, Singleton testified, consistently with the above, that Appellant fired the first shots. As a result of Singleton's testimony at Hayes' trial, Hayes was acquitted of all charges, including murder. **See** CP-51-CR-0006086-2009.

However, when Singleton first began his testimony at Appellant's trial, he stated that it was Hayes, and not Singleton, who shot first. N.T., 2/8/11, at 183-84. The trial court stopped the testimony, excused the jury for the day, and said the following on the record to Singleton:

> Now that we are all here, let me express this to you, Mr. Singleton, in no uncertain terms: I don't know what your street mind thinks, but I am going to explain it to you.
>
> You maybe made a mistake today. I am not sure. You may have heard incorrectly. You just took the stand in this case, this week, and said that [Hayes] shot first, but last week, you said, under oath, and on this same record, with the same stenographer, and the same Judge, that [Appellant] shot first.
>
> You have now just placed yourself -- the District Attorney was getting ready to see if that was a mistake. I stopped it there, before you said one more thing.

Be very careful what you do, because that's Perjury, and it is Perjury on the record, and it is Perjury in front of the same Judge.

If you are playing some little game here, guess what is going to happen? You are going to get charged with Perjury. Now, this is a Homicide case, so I will make sure that you receive a maximum consecutive sentence.

Think about who you are helping out here, because it isn't yourself.

Now, we are going to take a break for today. Do some long hard thinking tonight. You get on this stand, and you tell the truth. You have been warned. So, you can tell whatever story you want, but I am telling you now: If you say that again, it is Perjury, because it is on the record. If it is the truth, and you perjured yourself before, then live with it, but if it is not the truth, and you think that you are doing some favor, or you are afraid, guess who is getting the sentence here? You, and it will be the maximum, consecutive.

Take him back.

N.T., 2/8/11, at 196-98. Appellant's attorney made no objection to the court's remarks.

The next day, Singleton resumed his testimony, recanted his testimony from the previous day, and testified that Appellant fired first. N.T., 2/9/11, at 3-4. Singleton explained that the preceding day he "made a mistake" and "said the wrong thing," because he was nervous. *Id.* at 4.

At the conclusion of the trial, Appellant was found guilty of third-degree murder, aggravated assault, violating the Uniform Firearms Act, and

possession of an instrument of crime.[1] He was sentenced on May 5, 2011, to sixteen to thirty-two years' incarceration.[2] Appellant's judgment of sentence was affirmed by this Court on June 19, 2013, and the Pennsylvania Supreme Court denied Appellant's request for further direct review on January 16, 2014. *See* PCRA Ct. Op., 10/27/16, at 1.

Appellant filed a timely PCRA petition, *pro se*, on August 5, 2014, and thereafter filed a separate motion to proceed *pro se*. Counsel was appointed to represent Appellant on March 24, 2015; on July 9, 2015, counsel filed a no-merit letter[3] and petition to withdraw. The PCRA court conducted *Grazier*[4] hearings on October 19, 2015, and December 21, 2015, after which the court allowed counsel to withdraw and allowed Appellant to proceed *pro se* and file an amended petition.[5]

Appellant filed an amended petition on February 22, 2016.[6] On June 23, 2016, the PCRA court issued notice of its intention to dismiss Appellant's

---

[1] 18 Pa.C.S. §§ 2502(c), 2702, 6106, and 907, respectively.

[2] Appellant received a sentence of sixteen to thirty-two years' incarceration for the murder charge, and lesser concurrent sentences on his other charges.

[3] *See Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988); *Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988).

[4] *See Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998).

[5] Appellant was present at the *Grazier* hearings via video-conferencing.

[6] The Commonwealth moved to dismiss Appellant's PCRA petition on May 24, 2016. In its motion, the Commonwealth argued that the trial court's
*(Footnote Continued Next Page)*

claims without a hearing pursuant to Pa.R.Crim.P. 907. The court announced its reasons for dismissing the petition in open court that day; a representative of the Commonwealth was present in court, but Appellant was not. Appellant did not respond to the Rule 907 notice, and on August 9, 2016, the PCRA court dismissed his petition. *See* PCRA Ct. Op. at 2.

Appellant thereafter filed this timely appeal, raising the following issues:

> I. Did the PCRA court abus[e its] discretion in dismissal of Appellant's PCRA . . . wherein Appellant argued . . . counsel was ineffective for failing . . . to object to and preserve for appellate review . . . the court's improper pressuring of the Commonwealth's key witness[?]
>
> II. Was the PCRA court's dismissal . . . improper . . . wherein Appellant argued . . . counsel was ineffective for failing to bring forth evidence of the violent history between [Appellant] and Demetrius Hayes and request a *McCusker*[7] charge after revealing that provocation was established prior to the exchange between them[?]

Appellant's Brief at vii (formatting altered).

---

*(Footnote Continued)* ───────────────

comments to Singleton were within that court's discretion and that the firearms evidence at trial, which established that eight fired cartridges cases matching Appellant's gun were found at the scene of the shooting, versus only three from Hayes' gun, supported Singleton's account that Appellant fired first and continued to fire as Hayes escaped. *See* Commonwealth's Mot. to Dismiss, 5/24/16, at 7-9. The Commonwealth also argued that no evidentiary hearing was warranted in this case because Appellant did not provide a signed certification regarding each witness he intended to call at the hearing. *See id.* at 9 n.2.

[7] *Commonwealth v. McCusker*, 292 A.2d 286 (Pa. 1972).

In reviewing an appeal from the denial of PCRA relief, "this Court is limited to ascertaining whether the evidence supports the determination of the PCRA court and whether the ruling is free of legal error." *Commonwealth v. Andrews*, 158 A.3d 1260, 1263 (Pa. Super. 2017) (citation omitted).

## Trial Court's Admonition of Tyrone Singleton

Appellant first complains that his trial counsel was ineffective for failing to object or move for a mistrial following the statements made by the court during the break in Singleton's testimony. Appellant argues that the trial court threatened the witness with perjury and advocated for the Commonwealth, causing the witness to change his testimony and to say, untruthfully, that Appellant was the first shooter during the confrontation. Appellant asserts:

> the trial court[,] whether intentionally or not, coerced Singleton into altering his account, a function through cross-examination that the assigned prosecutor had a duty to effectuate, and of which said prosecutor was deprived by the contravention of the trial court. Appellant was stripped of due process, as Singleton was clearly intimidated into retracting his testimony in order to restructure said testimony in conformity to his testimony at Hayes' trial.

Appellant's Brief at 5. Appellant claims that, "[t]he Court should have allowed the inconsistent testimony to unfold and allow the Commonwealth to examine the witness' reasoning[;] a proper cross-examination would expose the witness' reason for retracting truthful testimony." PCRA Pet., 8/5/14, at 7-8. Appellant contends that his trial counsel was ineffective for failing to

object to the court's intervention and preserve this issue for appellate review. *Id.* at 7.[8] Appellant cites *Commonwealth v. Laws*, 378 A.2d 812, 816 (Pa. 1977) (holding trial court's questioning of witness and warning of perjury charges constituted reversible error), *Commonwealth v. Myma*, 123 A. 486, 487 (Pa. 1924) ("Witnesses should be interrogated by the judge only when he conceives the interest of justice so requires"), and *Commonwealth v. Toombs*, 409 A.2d 876, 878 (Pa. Super. 1979) (trial judge's questioning of witness indicated he sided with the prosecution and was reversible error).

In the PCRA court's Rule 1925(a) opinion, it cites the notes of testimony from June 23, 2016, when it announced its decision to dismiss Appellant's petition without a hearing. On that day, the PCRA court recited the aforementioned circumstances surrounding Singleton's testimony and what it said to Singleton. But the court did not further explain its reasoning, either on the record or in its opinion, or discuss any legal authority. N.T., 6/23/16, at 5-7.

With regard to PCRA claims alleging ineffective assistance of counsel, this Court has held:

---

[8] Appellant also argues that his temporarily-appointed PCRA counsel was ineffective; however, as Appellant was ultimately permitted to represent himself before the PCRA court, the actions of PCRA counsel had no bearing on Appellant's case and are not properly before this Court.

Counsel is presumed to have been effective. To overcome this presumption, a PCRA petitioner must plead and prove that: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.

*Andrews*, 158 A.3d at 1263 (quotation marks and citation omitted). "In determining whether counsel's action was reasonable, we do not question whether there were other more logical courses of action which counsel could have pursued; rather, we must examine whether counsel's decisions had any reasonable basis." *Commonwealth v. Washington*, 927 A.2d 586, 594 (Pa. 2007). "[G]enerally, the court should not glean from the record whether counsel had a reasonable basis for his action or inaction absent an evidentiary hearing, and . . . it is only in the most clear-cut cases that the reasons for counsel's conduct are apparent from the record." *Commonwealth v. Hanible*, 30 A.3d 426, 442 (Pa. 2011), *cert. denied*, 133 S. Ct. 835 (2013).

The facts of the instant case bear strong resemblance to those of *Commonwealth v. Fornicoia*, 650 A.2d 891 (Pa. Super. 1994). In that case, the Commonwealth's witness had, at some point prior to trial, identified the defendant as present at a residence at which marijuana was purchased. *Id.* at 892. However, when called as a witness at trial, the witness could not identify the defendant. *Id.* at 893. The trial judge recessed the jury, and stated the following to the witness:

Now, without saying anything, all right, testifying under oath and lying is called perjury. That happens to be a felony offense in the Commonwealth of Pennsylvania. When a witness goes south— that's what we call it when they tell the DA one thing and then they come in and they testify different. The judge has an obligation to the tell the witness, if you continue this, you may subject yourself to the charge of perjury which is punishable by ten years imprisonment. The last time someone committed perjury in my courtroom I gave them five to ten. . . . I have no idea whether you're lying under oath, but the DA is telling me you told her something different. . . . However, if you realize the error of your ways and you think you're lying under oath, you can recant. If you recant you cannot be charged.

*Id.* When the witness resumed testimony, he identified the defendant. *Id.* The defendant was convicted largely on the basis of that identification testimony. *Id.*

On appeal, we held that the trial court erred. We stated that while a trial court "has the power to question a witness and warn the witness of the ramifications of perjury, . . . this power should be used with caution," so that the court does not "question a witness such that the witness feels pressured to testify in a particular way." *Fornicoia*, 650 A.2d at 893 (citing *Commonwealth v. Laws*, 378 A.2d 812, 815 (Pa. 1977)). Not only had the trial court's conduct led the witness to change his testimony, but the jury was without the benefit of viewing the impeachment of the witness by the prosecutor and therefore lacked the opportunity to judge the witness' credibility properly. *Id.* at 894. We determined that the error was not harmless, and remanded the case for a new trial. *Id.* at 894-95.

Similarly, in **Commonwealth v. Laws**, the witness had identified the defendant at the preliminary hearing as the person who had stabbed the victim; at trial, the witness stated that the perpetrator was not present in the courtroom. **Laws**, 378 A.2d at 813-14. The trial court excused the jury, confronted the witness with his inconsistent preliminary hearing testimony, and warned the witness of the consequences of perjury. **Id.** at 814-15.[9] The questioning resumed, and after the prosecutor impeached the witness with the transcript of the preliminary hearing, the witness recounted his initial trial testimony and identified the defendant as the assailant. **Id.** at 815. The Supreme Court held that the pressuring of the witness by the trial court, which left the witness "little doubt as to which testimony the court believed," constituted reversible error. **Id.** at 816-18.

Here, as in **Fornicoia** and **Laws**, the court identified an inconsistency in Singleton's testimony, excused the jury, and confronted Singleton. It gave Singleton the evening to consider his options, and stated that unless he told the truth on the stand and recanted his initial trial testimony, "I will make sure that you receive a maximum consecutive sentence." As in **Fornicoia**, Singleton thereafter recanted his testimony, obviating the need for the

_____

[9] The court asked the witness at least five times during the recess whether he was telling the truth, and said, "And I want [the defendant] to understand . . . a person who lies under oath is subjecting himself to perjury prosecution, which carries a substantially severe penalty, including prison . . . and/or fines, if a person does lie under oath." **Laws**, 378 A.2d at 815 n.8.

prosecutor to impeach him. *See Laws*, 378 A.2d at 815-18; *Fornicoia*, 650 A.2d at 893-95.

Given the prevailing caselaw on this issue, Appellant's claim that his trial counsel was ineffective for failing to object to the trial court's intervention regarding Singleton's testimony has arguable merit, and the PCRA court erred when it held otherwise. *Andrews*, 158 A.3d at 1263.[10] But because the PCRA court failed to hold an evidentiary hearing, or assess the other two prongs of an ineffectiveness query, we are unable to fully review Appellant's claim. *See* Pa.R.Crim.P. 908; *Hanible*, 30 A.3d at 442.[11] We therefore remand for an evidentiary hearing. Thereafter, should either side

---

[10] The PCRA court's Rule 1925(a) opinion did not give any reason why Appellant's claim lacked arguable merit under the current state of the law.

[11] The Commonwealth, rather than submitting argument in its brief, refers this Court to the motion to dismiss it filed with the PCRA court. In that motion, the Commonwealth argued that no evidentiary hearing was warranted because Appellant did not provide a signed certification regarding each witness he intended to call at the hearing. *See* Commonwealth's Mot. to Dismiss, 5/24/16, at 9 n.2 (citing 42 Pa.C.S. § 9545; *Commonwealth v. Brown*, 767 A.2d 576, 583 (Pa. Super. 2001)). However, the PCRA court did not dismiss Appellant's petition based on that alleged defect; if it had, it would have been first obligated to notify Appellant of the defect so that it might be corrected. *See* Pa.R.Crim.P. 905(B); *Commonwealth v. Robinson*, 947 A.2d 710, 711 (Pa. 2008) (*per curiam* order). Instead, the PCRA court's Rule 907 notice of its intent to dismiss Appellant's petition without a hearing stated only that "The issues stated in your PCRA petition are without arguable merit," and thus did not apprise Appellant of the absence of a signed certification.

appeal the PCRA court's disposition of Appellant's petition, the PCRA court shall issue a written decision thoroughly explaining its reasoning.[12]

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2017

_____

[12] In light of our granting relief on Appellant's first issue, we decline to address Appellant's second issue.