J-A11028-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LISA ANN SCHMIDT | |
| Appellant | No. 989 EDA 2021 |

Appeal from the Judgment of Sentence Entered January 8, 2021
In the Court of Common Pleas of Pike County
Criminal Division at No: 0000392-2018

BEFORE:  BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY STABILE, J.:                **FILED SEPTEMBER 27, 2022**

Appellant, Lisa Ann Schmidt, appeals from the January 8, 2021 judgment of sentence imposing an aggregate 13 to 40 years of incarceration for drug delivery resulting in death ("DDRD"), conspiracy,[1] and related offenses.  We affirm.

The Commonwealth filed its criminal complaint on September 26, 2018. Appellant petitioned for a writ of *habeas corpus* on July 7, 2019, and the trial court denied it on July 11, 2019.  Appellant's August 2, 2019 omnibus pretrial motion sought, among many other things, dismissal of the charges on various grounds, change of venue, discovery, suppression of various evidence, and disclosure of the identity of a confidential informant.  The trial court denied

---

[1]  18 Pa.C.S.A. §§ 2506, 903.

the motion for change of venue after a hearing on October 18, 2019. The trial court conducted a hearing on the remainder of Appellant's omnibus motion on February 25, 2020 and denied the motion by order of March 9, 2020. Appellant filed a second petition for writ of *habeas corpus* on August 21, 2020, followed by motions in *limine* on September 3, 2020 and September 8, 2020 seeking, among other things, employment of a defense toxicology expert, exclusion of various evidence, and continuance. The trial court granted the continuance, scheduled a hearing on the remaining matters and, on September 22, 2020, entered an order appointing a toxicologist for the defense and denying the remainder of Appellant's outstanding motions. On November 6, 2020, ten days before trial was to begin, Appellant filed another motion for continuance claiming that the toxicologist would be unavailable to testify. The trial court denied the request, and trial commenced on November 16, 2020.

Appellant filed several motions in *limine* on the first day of trial, including a motion for admission into evidence of a summary of cell phone extraction evidence prepared by defense counsel. The trial court denied that motion without prejudice to offer the document for admission during trial. The trial court eventually sustained the Commonwealth's objection to the document and it was not admitted.

The charges arose from the death of the 27-year-old victim, Jennifer Bosch, after she ingested heroin, fentanyl, and acetyl fentanyl. The

Commonwealth alleged that Appellant delivered those substances to the victim. On November 18, 2020, the jury found Appellant guilty of the aforementioned offenses. On January 8, 2021, the trial court imposed sentence as set forth above. Appellant filed a timely post-sentence motion seeking, among other things, a new trial and modification of sentence. The trial court denied Appellant's post-sentence motion at the conclusion of an April 6, 2021 hearing. This timely appeal followed.

Appellant raises eight assertions of error:

A. Whether the trial court erred as a matter of law in denying [Appellant's] motion to continue trial because the court's approved defense expert was unavailable[?]

B. Whether the trial court erred as a matter of law and/or abused its discretion in addressing conduct of trial amid Covid-19 issues[?]

C. Whether the trial court acted erroneously in denying [Appellant's] motion in *limine* to admit a document excerpt prepared by counsel because the original document presented the best evidence[?]

D. Did the trial court err by finding Appellant guilty of all charges when the evidence was not sufficient to sustain them[?]

E. Whether the trial court erred and/or abused its discretion when sentencing the Appellant to an increased period of incarceration due to Appellant's decision to try the matter[?]

F. Whether the trial court erred and/or abused its discretion by moving the Appellant to and from the courtroom in view of the jury while physically restrained[?]

G. Whether the trial court erred and/or abused its discretion by holding the trial while mechanical issues involving the heating system were being addressed rendering the courtroom so unreasonably cold as to impair the jury[?]

H. Whether the trial court erred and/or abused its discretion by permitting the jurors to take notes during the trial and monitoring the jurors' use of note pads[?]

Appellant's Brief at 14-15.

We will consider these issues in turn. Appellant first argues that the trial court erred in denying her motion to continue trial because of the unavailability of Appellant's forensic toxicologist. We review an order denying a continuance for abuse of discretion. *Commonwealth v. Ross*, 57 A.3d 85, 91 (Pa. Super. 2012), *appeal denied*, 72 A.3d 603 (Pa. 2013). An abuse of discretion occurs "when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record. *Id.*

Appellant relies on Rule 216 of the Pennsylvania Rules of Civil Procedure, which provides that a party has grounds for a continuance when a material witness becomes ill. Pa.R.C.P. 216(A)(2). We observe that the civil rules are not applicable to a criminal trial, and that there is no evidence or allegation that Appellant's toxicologist was sick. Rather, Appellant claims the toxicologist had a previous commitment to trial in another jurisdiction at the time of Appellant's trial.

Further, as the trial court explained, this matter had proceeded for nearly two years before Appellant finally petitioned for appointment of a forensic toxicologist:

The Appellant first challenges the trial court's decision to deny a request for continuance based upon the unavailability of

- 4 -

her toxicology expert ("Expert") on the dates of trial. Under normal circumstances, such a request would not be unreasonable and would likely be granted. However, the circumstances in the instant matter support the trial court's decision to deny the request. First, the court considered the timing of the request. Here the criminal information was filed in September 2018, yet the Appellant waited until September 2020, a period of two (2) years, before requesting that an Expert even be appointed. Second, a trial continuance was previously granted by the court, which moved the matter from the September Term to the November Term. Additionally, the Appellant never requested that the Expert be permitted to testify telephonically or virtually.

Trial Court Opinion, 7/20/21, at 10-11. Given Appellant's apparent lack of diligence in seeking the appointment of an expert, despite having filed voluminous pretrial motions on various matters, and given that she waited until the week before trial to seek an additional continuance (she offers no explanation as to why she was not aware of the conflict in the toxicologist's schedule sooner), without attempting to make alternative arrangements for the toxicologist to testify remotely, we discern no abuse of discretion in the trial court's order.

Next, Appellant argues that the trial court erred in its handling of various courtroom protocols made necessary by the Covid-19 pandemic. In this section of her brief, Appellant argues the trial court erred by (1) refusing to provide a list of people in the jury pool, a list of those who were excused prior to *voir dire*, and the reason why they were dismissed; (2) changing the layout of the courtroom so that Appellant could not observe the witnesses and the jurors simultaneously; and (3) allowing jurors to wear masks during trial. Appellant's Brief at 27-28.

For the first subpart of this argument, Appellant's concern appears to be that the demographic of the jury pool may have been affected by potential jurors asking to be excused from Appellant's November 2020 trial because of the ongoing pandemic. Appellant relies on Pa.R.Crim.P. 625, which governs juror qualifications and permits a defendant to challenge the array "on the ground that the jurors were not selected, drawn, or summoned substantially in accordance with law." Pa.R.Crim.P. 625(B)(2). The "law" referenced in Rule 625(b)(2) is found in 42 Pa.C.S.A. §§ 4501-4503, 4521-4526, 4531-4532.[2] *See*, Pa.R.Crim.P. 625, comment. Our Supreme Court has written:

> [T]he characteristics of one particular panel are not the type of facts which constitute grounds for a challenge. Rather, since the challenge must be to the selection procedures themselves, and not to the composition of a particular panel, the facts must provide evidence indicating either that the procedures as designed or implemented are likely to result in juries unrepresentative of a cross-section of the community, or that the procedures have, in fact, continuously failed to represent certain identifiable population groups over a period of time.

*Commonwealth v. Butler*, 291 A.2d 89, 91 (Pa. 1972).[3]

---

[2] Section 4501 of Title 42 provides, among other things, that a person with a right to a jury trial has the right to have jurors selected at random from a representative cross section of the eligible population. 42 Pa.C.S.A. § 4501(1). Section 4502 governs qualifications of jurors, and § 4503 governs exemptions from jury duty. Sections 4521 through 4526 govern the lists of qualified and unqualified jurors, and the jury selection process. Section 4531 and 32 govern the summoning of jurors. As noted in the main text, Appellant does not develop an argument under any of these.

[3] *Butler* analyzed Rule of Criminal Procedure 1104, the substantive predecessor to current Rule 625.

We are unable to discern precisely how Appellant believes she was prejudiced by her lack of access to information about jurors who were summoned but, for whatever reason, did not appear. She does not argue the existence of any pervasive problem with the jury selection procedures used during the pandemic, nor does she develop an argument under any applicable section of Title 42.

The trial court summarized it well:

> As to the allegations […] (relating to the failure to disclose the identity of all persons summoned for jury duty, those who were excused, and the reason therefor), we are at a loss to understand how that information would have or could have had any effect on the Appellant's rights or outcome of her trial. The identify of a person called for jury duty but [who] did not appear, for whatever reason, is completely irrelevant. Additionally, even if the court were to consider providing the names of persons called, the reasons for excusing any of them likely implicate personal and private information, including but not limited to personal medical information, to which the Appellant is not entitled and of which would have no effect on the outcome of the trial.

Trial Court Opinion, 7/20/21, at 7. In short, Appellant's argument fails because she has developed no viable factual or legal basis for it.

In the next subpart of her second assertion of error, Appellant claims the trial court erred in rearranging the courtroom so that she could not simultaneously observe the jurors and witnesses. The third subpart—that the trial court should not have permitted the jurors to wear Covid masks—is related to the second, and we address them together.

Appellant's legal basis for these arguments is the Confrontation Clause, pursuant to which a criminal defendant enjoys the right to be confronted with adverse witnesses. U.S. CONST. amend. VI. Appellant cites **Commonwealth v. Yohe**, 79 A.3d 520, 544 (Pa. 2013), **cert. denied**, 572 U.S. 1135 (2014) for the proposition that Confrontation Clause arguments present a question of law. Appellant's Brief at 35. But she develops no argument that the Confrontation Clause guarantees a defendant the right to observe jurors' facial expressions during trial or the facial expressions of potential jurors during *voir dire*. This Court recently held that masking and social distancing of potential jurors during *voir dire* does not interfere with a defendant's Sixth Amendment right to the paneling of a fair and impartial jury. **Commonwealth v. Delmonico**, 251 A.3d 829, 839-42 (Pa. Super. 2021), **appeal denied**, 265 A.3d 1278 (Pa. 2021). Because Appellant develops no viable legal argument in support of her right to observe juror's expressions during trial, and because this Court has already held that masking during *voir dire* does not inhibit the empaneling of a fair and impartial jury, Appellant's argument fails. This concludes our analysis of all subparts of Appellant's second assertion of error.

In her third assertion of error, Appellant claims the trial court erred in denying her pretrial motion in *limine* to introduce a document excerpt prepared by defense counsel. Admission of evidence rests within the discretion of the trial court, and we will not disturb the trial court's ruling absent an abuse of discretion. **Commonwealth v. LeClair**, 236 A.3d 71, 78

(Pa. Super. 2020), *appeal denied*, 244 A.3d 1222 (Pa. 2021). We will not reverse absent an abuse of that discretion. *Id.* As noted above, the trial court abuses its discretion when "the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." *Ross*, 57 A.3d at 91.

The evidence in question is an extract of cell phone messages the Commonwealth provided to Appellant in discovery. Appellant reformatted it for readability:

> The data consists of text messages extracted from a cell phone. The data is reported in columnar format which, when printed in 11 point Calibri font, requires 2 landscape 8 ½ by 11 inch pages laid side by side to see all the columns. In that format, the columns containing the text of a message is so narrow it is not worth reading the few letters displayed. Counsel filed the discovery data provided by the Commonwealth to the record along with the reformatted data so that the court in a few moments' glance could see the reformatting consisted of removing blank columns and adjusting relevant column widths to be able to read the dates/times messages were sent.

Appellant's Brief at 37-38.

Per Rule 1002 of the Pennsylvania Rules of Evidence, the original writing is required unless the proponent establishes grounds for admissibility under any other applicable rule or statute. Pa.R.E. 1002. Rule 1002 is essentially a codification of the common law best evidence rule. *Commonwealth v. Green*, 162 A.3d 509, 517 (Pa. Super. 2017). Rule 1006 permits summaries to prove content under certain circumstances:

The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court. The proponent must make the originals or duplicates available for examination or copying, or both, by other parties at a reasonable time and place. And the court may order the proponent to produce them in court.

Pa.R.E. 1006.

Appellant relies on a test articulated by the Federal District Court for the District of New Jersey:

As long as summary charts meet the following requirements, they are admissible: (1) the underlying documents must be admissible, even if they are never admitted; (2) the underlying documents must be too voluminous for convenient in-court review; (3) the charts must accurately summarize the underlying documents; (4) the summary charts and the underlying documents must have been made available at a reasonable time and place for inspection by the opposing side; and (5) the person who prepared the charts must have been made available for cross examination.

***United States v. Bertoli***, 854 F. Supp. 975, 1051 (D.N.J. 1994)), ***reversed in part on other grounds***, 40 F.3d 1384 (3d Cir. 1994).

We need not consider whether to adopt the ***Bertoli*** test, as Appellant's argument fails under the plain language of Rule 1006. She explained, in the portion of her brief quoted above, that the original was only two 8½" by 11" pages. Regardless of its formatting, therefore, the original was not so voluminous that it could not have been conveniently examined in court. The trial court did not abuse its discretion in refusing to admit Appellant's reformatted version into evidence.

In her fourth assertion of error, Appellant argues that the record lacks sufficient evidence in support of her conviction for drug delivery resulting in death ("DDRD"). Our standard of review is *de novo*, and our scope of review and our scope of review is limited to "the evidence of record, and all reasonable inferences arising therefrom, viewed in a light most favorable to the Commonwealth as the verdict winner." ***Commonwealth v. Rushing***, 99 A.3d 416, 420-21 (Pa. 2014).

The Crimes Code defines DDRD as follows:

> **(a) Offense defined.**--A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of section 13(a)(14) or (30) of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a) (footnoted omitted).[4]

---

[4] The DDRD statute references the following portions of the Controlled Substance Act:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> […]
>
> (14) The administration, dispensing, delivery, gift or prescription of any controlled substance by any practitioner or professional assistant under the practitioner's direction and supervision unless done (i) in good faith in the course of his professional practice; (ii) within the scope of the patient

*(Footnote Continued Next Page)*

Instantly, Appellant argues the Commonwealth failed to prove by sufficient evidence that she (1) delivered controlled substances to the victim; and (2) that any substance Appellant may have delivered to the victim caused the victim's death. The record belies these claims.

Christine Lee, a friend and roommate of the victim, testified that Appellant had been her supplier of cocaine, crack cocaine, and heroin. N.T. Trial, 11/17/20, at 24. Lee and the victim eventually began obtaining heroin from Appellant, four to six bags at a time. *Id.* at 30. Appellant, in turn, obtained the drugs from Katie Woolsey. *Id.* at 29.

Woolsey testified that she obtained heroin in Paterson, New Jersey, and brought it to Pike County. *Id.* at 63. Woolsey confirmed that she provided heroin to Appellant. *Id.* at 65. Appellant, in turn, provided it to others. *Id.* at 66. Appellant confirmed this arrangement during an interview with an investigating officer. *Id.* at 135-36. The bags of heroin Woolsey provided to

---

relationship; (iii) in accordance with treatment principles accepted by a responsible segment of the medical profession.

[…]

(30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(14), (30).

Appellant were branded "Sinaloa," and Woolsey warned Appellant that they contained heroin that was stronger than normal. *Id.* at 68-69. Appellant passed Woolsey's warning on to Lee only days before the victim's death on November 26, 2017. *Id.* at 35. Extractions from the victim's cell phone revealed text messages and phone calls, from November 17, 2017 through November 25, 2017, between and among Appellant, Lee, and the victim. *Id.* at 125-128. Sinaloa-branded bags were found in the victim's residence at the time of her death.

The testimony clearly reflects that the victim was found deceased. N.T. Trial, 11/16/20, at 45-46, 68-70. Appellant notes that the Commonwealth at trial produced a non-certified death certificate (*id.* at 71), but she does not explain how this casts any doubt on the testimony of eyewitnesses who observed, photographed, and examined the victim's dead body. The victim's autopsy revealed evidence that she had ingested cocaine, marijuana, fentanyl, acetyl fentanyl, and heroin prior to her death. *Id.* at 96-101. She died from mixed substance toxicity—the fentanyl, acetyl fentanyl, and heroin combined to depress the victim's respiratory system, causing her death. *Id.* at 101.

In summary, the evidence of record read in a light most favorable to the Commonwealth contains sufficient evidence that Appellant supplied the drugs that resulted in the victim's death. Appellant does not dispute that the substances involved were controlled substances, and that their delivery

violated the Controlled Substances Act. Appellant's sufficiency of the evidence argument fails.

In her fifth assertion of error, Appellant claims the trial court increased the length of Appellant's incarceration in retaliation for her decision to try the case. Appellant's argument is based on matters *de hors* the record. She compares her sentence to that of Woolsey, who pled guilty to DDRD and related offenses with regard to the death of Bosch and two other victims. Appellant claims Woolsey received a minimum term of six years and six months for each DDRD offense. Likewise, Appellant claims Woolsey received a consecutive minimum term of five years and six months for each count of conspiracy. Woolsey's judgment of sentence is not a matter of record in this case. Appellant has attached Woolsey's sentencing order as an exhibit to her appellate brief.[5]

First, we remind Appellant that attachments to an appellate brief cannot be considered as supplements to the certified record. "[O]ur review is limited to those facts which are contained in the certified record and what is not contained in the certified record does not exist for purposes of our review." ***Commonwealth v. B.D.G.***, 959 A.2d 362, 372 (Pa. Super. 2008) (interior quotation marks omitted); Pa.R.A.P. 1931.

_____

[5] Appellant makes similar claims about another alleged member of the drug ring, whose sentencing order is attached to Appellant's brief at Exhibit C.

Second, Appellant develops no argument as to why the sentencing court abused its discretion[6] in this case. Appellant's seven-year minimum sentence for DDRD and her six-year minimum sentence for conspiracy were within the applicable guideline range. Appellant fails to explain how the record before us supports a conclusion that the trial court abused its sentencing discretion. Appellant's fifth assertion of error does not merit relief.

Next, in her sixth assertion of error, Appellant claims the trial court erred in allowing her to be escorted into and out of the courtroom in restraints, in full view of the jury. Appellant argues this violated her right to an impartial jury under Article I, § 9 of the Pennsylvania Constitution.[7] Appellant is correct

---

[6] Appellant's brief omits a concise statement of reasons for allowance of appeal, as required by Pa.R.A.P. 2119(f). Because the Commonwealth has not objected, we will not find waiver on this basis. In any event, we review a challenge to the trial court's sentencing discretion for an abuse of that discretion. **Commonwealth v. Moury**, 992 A.2d 162, 169-170 (Pa. Super. 2010).

> When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation. Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors.

*Id.* at 171 (internal citations and quotation marks omitted). As noted in the main text, Appellant offers no argument as to how the sentencing court abused its discretion under these criteria.

[7] "In all criminal prosecutions the accused hath a right to […] a speedy public trial by an impartial jury of the vicinage[.]" PA. CONST. art. I, § 9.

that a fair trial requires that a defendant not be seen in shackles or physical restraints. ***Commonwealth v. Pezzeca***, 749 A.2d 968, 970 (Pa. Super. 2000). Nonetheless, the trial court has discretion to impose some form of restraint where necessary to maintain order. ***Id.***

Appellant's assertion of error misstates the record in this case. She never appeared in view of the jury wearing physical restraints. Rather, because of the Covid-19 protocols in place at the time of Appellant's trial, the layout of the courtroom was such that the jury could see her escorted to and from the courtroom by two deputy sheriffs, one of whom carried her glasses for her. Appellant acknowledges these facts in her brief. Appellant's Brief at 56.

The trial court explained:

> [T]he trial court adhered to the AOPC Recommendations during this trial. Unfortunately, the logistics of the courtroom layout, the unavailability of a jury room separate and apart from the main courtroom, and the general Covid-19 protocols implanted at the time, the court was forced to move Appellant to and from holding in view of the jury. However, the Appellant was never viewed while inside of or being removed from a holding cell, was never physically restrained by handcuffs or shackles, and while accompanied by Deputies of the Pike County Sheriff, always appeared in civilian clothing. While we admit that the situation was not ideal, moving this Appellant to and from the courtroom in view of the jury was a necessary safeguard considering Covid-19 protocols and not so prejudicial that a new trial would be required. Additionally, Appellant's counsel failed to request a curative instruction on the issue of the Appellant's movements in view of the jury. Of course, such instruction would be provided at the discretion of the Court, but in this case, no instruction was requested.

Trial Court Opinion, 5/17/21, at 17. Because Appellant never appeared in front of the jury in restraints, and because Appellant's brief fails to explain how she preserved any argument related to her comings and goings in front of the jury, the argument fails.

In her seventh assertion of error, Appellant claims the trial court erred in permitting trial to proceed while the courtroom heating system was experiencing mechanical issues. The only citation in support of this argument is Appellant's counsel's claim near the close of trial that some of the juror's teeth seemed to be chattering. N.T. Trial, 11/18/20, at 79. Appellant also claims, without citation to the record, that jurors and courtroom personnel wore winter coats and gloves. Appellant cites no law in support of her argument, nor does she explain where or how she raised this issue before the trial court. These deficiencies result in waiver. Pa.R.A.P. 302(a); 2119(b).

In her final assertion of error, Appellant claims the trial court erred in permitting the jurors to take notes and monitoring the use of the jurors' notepads. Appellant argues, incorrectly, that Pa.R.Crim.P. 644[8] prohibits notetaking by jurors. Rather, Rule 644 expressly permits juror notetaking subject to certain restrictions and requires the trial court to instruct the jury as to the proper use of notes. Pa.R.Crim.P. 644. Beyond this, Appellant's single-paragraph argument on this issue asserts only that the record contains

---

[8] We are cognizant that an amended Rule 644 took effect on April 1, 2022. We rely on the pre-amendment version that applied during Appellant's trial.

no reference that the trial court monitored the jurors' use of notebooks. Appellant's Brief at 58. Appellant's argument fails because it relies on an incorrect statement of the law and because Appellant fails to explain where and how any specific provision of Rule 644 was violated, or where she objected to and thus preserved her argument as to any specific violation of Rule 644.

In summary, we have found no merit to any of Appellant's arguments. We therefore affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2022